IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | |
|---|---|
| LYNCHBURG RANGE & TRAINING, LLC, *et al.*, ) | |
| Plaintiffs, ) | |
| v. ) | Case No. 6:20-cv-00020 |
| HON. RALPH S. NORTHAM, *et al.*, ) | |
| Defendants. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION
TO REMAND CASE TO STATE COURT**

**COURSE OF PROCEEDINGS**

1. Early on the morning of Thursday April 9, 2020, at 8:31 a.m., Plaintiffs filed electronically their "Complaint, Application for Temporary Injunction, and Petition for Writ of Mandamus," (hereinafter "Complaint") against defendants Virginia Governor Ralph S. Northam and Superintendent of the Virginia State Police in the Circuit Court for the City of Lynchburg. Plaintiffs filed simultaneously with their Complaint six exhibits (Exhibits A through F), three supporting affidavits (the Affidavit of Mitchell Tyler, the Affidavit of Philip Van Cleave, and the Affidavit of Erich Pratt), and a proposed form of order.

2. In their Complaint, Plaintiffs sought a declaratory judgment finding that provisions of Executive Order No. Fifty-Three, Issued by Governor Northam on March 23, 2020, which ordered the closure of all "indoor shooting ranges" in the Commonwealth, are:

(a) ultra vires and beyond the scope of the Governor's executive Authority under the Constitution of Virginia, the Emergency Services and Disaster Law (Va. Code § 44.1-146.13, et seq.), and otherwise;

(b) violative of Article I, § 13 of the Constitution of Virginia (Right to Keep and Bear Arms); and

(c) violative of Article I, § 7 of the Constitution of Virginia (Anti-Suspension Provision)." Complaint   Based on that finding, the Complaint sought a temporary injunction be issued enjoining enforcement of that closure, and a writ of mandamus to enjoin enforcement and notifying the public of the change. [Complaint, p. 1.]

3. No claim was brought by Plaintiffs under the Second Amendment, or any other provision of the U.S. Constitution. Indeed, Plaintiffs twice disavowed making any claim under the Second Amendment. *See* Complaint at 16, n.3,[1] and 17.[2]

4. On April 9, 2020, after electronically filing its Complaint, Counsel for Plaintiffs contacted the Clerk of the Lynchburg Circuit Court, to alert the Court as to the filing, and seek direction on scheduling a hearing.

5. On April 9, 2020, at 10:13 am, having not yet heard from the Clerk of Lynchburg Circuit Court, Counsel for Plaintiffs emailed the filed Complaint to the Solicitor General of

---

[1] "For avoidance of doubt, Plaintiffs do not rely upon, and seek no determination pursuant to, the Second Amendment, but only pursuant to Article I, § 13 of the Virginia Constitution."  Complaint at 16, n.3.

[2] "[I]t should be understood that Plaintiffs do not bring this action under the Second Amendment of the United States Constitution, and their analysis of cases arising under the Second Amendment is presented solely to allow this Court to see how other courts have resolved similar issues. Plaintiffs do not seek any determination by the Court, of any aspect of this case, under the Second Amendment to the U.S. Constitution, but when discussing the right to keep and bear arms, lay a claim only under Article I, § 13 of the Constitution of Virginia." Complaint at 17.

Virginia, the Office of the Attorney General, the Office of the Solicitor General, the Governor of Virginia.

6. On April 9, 2020, at 2:54 pm, upon being notified by the Clerk of the Lynchburg Circuit Court that a hearing had been scheduled for Tuesday, April 14, 2020, at 10:00 am, Counsel for Plaintiffs advised the same attorneys for the Commonwealth.

7. No response or any communication was forthcoming from counsel for the Commonwealth, until it sent to counsel of Plaintiffs an email this morning, April 13, 2020, at 10:04 am — less than 24 yours before the hearing to be held in Circuit Court — advising that removal documents had been filed in federal and state court.

8. On April 13, 2020, at 11:50 am, counsel for Plaintiffs received an email from this Court Clerk's office about the scheduling of a hearing on Plaintiff's forthcoming Motion for Remand.

9. On April 13, 2020, at 11:52 am, counsel for Plaintiffs forwarded the email from this Court Clerk's office to counsel for the Commonwealth.

## ARGUMENT

**I.      THE COMMONWEALTH'S ARGUMENTS FOR REMOVAL ARE MERITLESS.**

First, the Commonwealth claims that Plaintiffs have made a Second Amendment claim because Plaintiffs allege that Va. Code Ann. § 44-146.15(3) has been violated.  *See* Notice of Removal at 2.  That Virginia statute, in turn, prohibits the Governor from issuing emergency orders that "in any way limit or prohibit the rights of the people to keep and bear arms as guaranteed by Article I, Section 13 of the Constitution of Virginia **or** the Second Amendment of the Constitution of the United States."  Emphasis added.  Apparently, the Commonwealth's

3

contention is that because the words "Second Amendment" make an appearance in a state statute, that alone is enough to grant this Court jurisdiction over any case invoking the protections of the statute. Indeed, the Commonwealth attempts to support removal based on the fact that § 44-146.15(3) "expressly refers to both 'Article I, Section 13' ... and 'the Second Amendment....'" Notice of Removal ¶ 8.

Yet Plaintiffs' complaint **does not allege** that the Governor's order violates the Second Amendment — rather, Plaintiffs **contend rather** that the order violates Article I, Section 13 of the Virginia Constitution. The mere fact that the Virginia statute prohibits two different violations — one federal and one state — provides no basis for federal jurisdiction, when Plaintiffs **alleged only a state violation**, and no claim was made based on the federal prohibition in the statute.

Second, the Commonwealth argues that this Court has jurisdiction over Plaintiffs' Article I, Section 13 claim because Plaintiffs noted that the Governor's state order is inconsistent with the to the federal government's designation of shooting ranges as Essential Critical Infrastructure. Notice of Removal at 2 ¶ 9. This contention is groundless. As Plaintiffs point out, the federal list of essential critical infrastructure workers is "advisory in nature," and does not bind the states. Complaint ¶ 64. Plaintiffs contrast the Governor's order with the federal list in order to demonstrate the federal acknowledgment of "the principles of ... self-defense" and its "contribut[ion] to local and national security." Complaint ¶ 67. Additionally, Plaintiffs use the federal list to show how the Governor's order is arbitrary and capricious, adopting the federal list when it suits him, yet rejecting its application to firearms related businesses he disfavors. In short, simply because Plaintiffs contrast the Governor's state order with an advisory, nonbinding,

4

federal list does not mean their state claim morphs into a federal one. Plaintiffs' complaint raises no federal question to be adjudicated.

Third, the Commonwealth claims that, although Plaintiffs expressly "disclaim seeking any 'determination pursuant to ... the Second Amendment,'" their Article I, Section 13 claim nevertheless should be understood to be a Second Amendment claim because state courts have generally understood the two provisions "'as having the same scope and meaning.'" Notice of Removal at 2. That assertion is baseless. If that were the case, then no Plaintiff could ever bring a cause of action in state court under Article I, Section 13, because it would immediately become a Second Amendment claim subject to federal jurisdiction and removal by the Commonwealth. Nor is it necessary that "Plaintiffs ... concede that the challenged executive order complies with the Second Amendment." *See* Notice of Removal at 3. It is entirely possible for the Governor's order to violate the state constitution, as well as the federal, and for Plaintiffs to have their case in state court alleging only the state violation, which is precisely what Plaintiffs have chosen to undertake.

It is axiomatic that the protections provided by state constitutional provisions cannot dip below the baseline set by the federal constitution, as interpreted by the federal courts. If they do, then those state provisions are inoperable, and the federal baseline governs. Thus, state courts routinely interpret state constitutional provisions in line with substantially similar provision in the U.S. Constitution. That is the case with respect to dozens of state constitutions, in thousands of cases nationwide. Yet no one — until now — has ever alleged that a state determination that federal and state provisions are co-extensive turns every state case into a federal question.

Fourth, as the Commonwealth points out, Plaintiffs' "complaint relies almost *exclusively* on federal court decisions construing the Second Amendment." Notice of Removal at 2. Of course, as Plaintiffs pointed out, "[u]ntil this year, the Commonwealth has long given proper respect to the right to keep and bear arms, which has led to very few constitutional challenges to firearms laws, and thus, very little case law in the Virginia courts. As a noted Second Amendment scholar explained, '[w]here a constitutional right is respected by the legislature, it would seem to be a virtue that few judicial decisions are necessary.'" Complaint ¶ 51. Thus, Plaintiffs cite comparatively few state cases interpreting Article I, Section 13 precisely because there are few state cases interpreting Article I, Section 13.

On the other hand, Plaintiffs cite numerous federal decisions interpreting the Second Amendment because, again, as the Commonwealth admits, the federal and state rights "'generally have been viewed as having the same scope and meaning...'" Notice of Removal at 2. If the federal and state rights have similar if not the same meanings, then surely federal cases interpreting the federal right **might have some persuasive value** for a state court interpreting the state right, in the absence of available state precedents doing so.

Fifth, the Commonwealth correctly notes that Plaintiffs previously filed a complaint in state court that asserted both Second Amendment and Article I, Section 13 violations. Notice of Removal ¶ 1. And the Commonwealth correctly notes that, after it sought to remove Plaintiffs' first complaint to this court, Plaintiffs voluntarily dismissed that action, and filed a new action in state court, this time omitting the Second Amendment claim through "a handful of edits." Notice of Removal ¶ 3,6. The Commonwealth then concludes that this must mean Plaintiffs' second complaint **necessarily constitutes** a Second Amendment claim in disguise, especially

6

since it "rel[ies] almost exclusively on decisions by the Supreme Court and federal circuit courts about the meaning of the Second Amendment [and] 'a noted Second Amendment scholar'...." Nothing could be further from the truth. As noted above, the two rights have been found to be co-extensive. Thus, cases interpreting the one surely are persuasive as to interpreting the other. And, since the protections afforded by the rights are generally the same, that means that the Governor's order violates both federal and state constitutional provisions **for the same reasons**. Plaintiffs' complaint and motion thus was required to provide those reasons, regardless of which (or both) constitutional provision was invoked. Thus, it really is that simple, that it required only minor editing to Plaintiffs' first complaint to remove reliance on the Second Amendment in the second complaint.

      Sixth, the Commonwealth makes the ridiculous claim that the co-extensive nature of the Second Amendment and Article I, Section 13 means that an opinion on the scope of Article I, Section 13 "would supply a binding rule of decision" and "any ruling under state law will ... necessarily impact Second-Amendment jurisprudence that has yet to be written." In other words, according to the Commonwealth, **any and all** interpretations of **state** constitutional provisions must be made by the **federal** courts, once they are understood to be co-extensive in nature. This argument is based on a logical fallacy, demonstrates a serious misunderstanding of the relationship between the federal and state governments, and ignores the Supremacy clause of the U.S. Constitution.

      That Plaintiffs cite to various Second Amendment cases for persuasiveness does not change the analysis for removal because "[i] is fundamental that state courts [are] . . . free and unfettered [by federal law] . . . in interpreting their state constitutions." *Taylor v.*

*Commonwealth*, 26 Va. App. 485, 501, 495 S.E.2d 522, 530 (1998) (citation omitted). *See also Howell v. McAuliffe*, 788 S.E.2d 706, 713 (Va. 2016) ("We begin our analysis with the observation that this case has been brought by Virginia citizens against the Governor of Virginia and other state officials in the Supreme Court of Virginia, alleging violations of the Constitution of Virginia. Accordingly, Virginia law, not federal law, governs every aspect of our decision."). Virginia state courts are the proper forum for this matter.

    As noted above, just because state courts believe that **the text of** a state constitutional provision has co-extensive meaning to **the text of** a federal constitutional provision does not mean that all federal and state judicial **decisions interpreting that text** must be the same. And it does not mean a claim under the state provision is transformed into a claim under the federal provision, and therefore must thus be heard by a federal court. Indeed, while Second Amendment jurisprudence is certainly persuasive authority on Virginia courts when interpreting Article I, Section 13, it is certainly not binding. On the contrary, Virginia courts are free to disagree with federal courts as to the contours of the right to keep and bear arms. Virginia courts, for example, could conclude that both constitutional provisions provide greater protections than the federal courts think, and thus a person's rights under the Virginia Constitution would be greater than under the Second Amendment. Or they could decide at a later date that Article I, Section 13 is in fact not coextensive with the Second Amendment, and actually provides greater protections of the right to keep and bear arms. While the federal constitution provides a floor for constitutional rights, it does not set a ceiling. If it did, then all interpretation of state constitutions would be in the hands of federal courts. Finally, the Commonwealth could not be more wrong that a decision by a Virginia court as to the scope of Article I, Section 13 would

have "binding" effect or "necessarily impact" federal Second Amendment jurisprudence. On the contrary, the way Virginia courts interpret Article I, Section 13 has literally no effect (other than persuasive value) on the way federal courts interpret the Second Amendment.

Seventh, the Commonwealth cites two Supreme Court cases for the propositions that "'a plaintiff may not defeat removal by omitting to plead necessary federal questions in a complaint.'" Notice of Removal at 1 (citing *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)). In *Franchise Tax*, the Court referred to situations where a case "could be removed to federal court, although the petitioner had undoubtedly pleaded an adequate claim for relief under the state law of contracts and had sought a remedy available only under state law." The difference between there and here was that the "federal cause of action completely pre-empts [the] state cause of action any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Franchise* at 24. That is not the case here. No court could possibly conclude that the Second Amendment "completely pre-empts" Article I, Section 13, so that claims under the Virginia Constitution "arise under federal law."

It is not necessary, as the Commonwealth appears to argue, to plead a Second Amendment claim in order to raise an Article I, Section 13 claim. It defies logic to allege that a plaintiff cannot bring a state constitutional claim without invoking a co-extensive federal constitutional claim. Were it otherwise, then again, all Article I, Section 13 claims would automatically be swallowed up by the federal court, not to mention hundreds of similar state constitutional provisions across the country. That is not a power or jurisdiction that the federal courts have, nor is it a responsibility that the federal courts want.

9

The Commonwealth also cites to *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) for the idea that a plaintiff cannot "artfully cast[] their essentially federal claims as state-law claims." As discussed above, that is not what has occurred here — Plaintiffs' Ariticle I, Section 13 claim stands perfectly on its own, and is not a Second Amendment claim in disguise. More importantly, however, as one federal court has described it, "[w]hatever the import of *Moitie* on removal jurisdiction may have been, the Court is of the opinion that *Franchise Tax Board* supersedes it as the most recent Supreme Court authority on the issue. In fact, the opinion in Franchise Tax Board, written by Justice Brennan, who dissented from the jurisdiction holding in *Moitie*, does not cite the *Moitie* case at all." *Magic Chef, Inc. v. Int'l Molders & Allied Workers Union*, 581 F. Supp. 772, 776 n.4 (E.D. Tenn. 1983).

Eighth, because Plaintiffs have only raised state law and state constitutional claims, this Court has no original jurisdiction in this action, making removal improper. Plaintiffs seek injunctive relief against the Defendants based on the violations of the Constitution of Virginia and the Emergency Services and Disaster Law (Va. Code § 44.1-146.13, *et seq.*). These are state law claims. Federal law is clear on this issue: on a purely state law claim, federal courts lack jurisdiction. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.").

## II. EVEN IF THIS COURT COULD EXERCISE REMOVAL JURISDICTION, IT SHOULD APPLY PRINCIPLES OF ABSTENTION TO REMAND THE CASE TO STATE COURT.

Even if this Court were to determine that it could exercise jurisdiction over this case, it should nonetheless abstain from exercising that jurisdiction and remand this case to the state court, as it is based exclusively upon significant, complex, and unsettled issues of state law, regarding the state's constitutional balance between the Governor's claimed authority and the rights of Virginia's citizens.

### A. *Younger* Abstention.

"Since the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The philosophy of Younger also embraces a broader rule of comity, namely, that federal courts should abstain from the decision of constitutional challenges to state action, however meritorious the complaint may be, "whenever [the] federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237-38, 104 S.Ct. 2321 2328, 81 L.Ed.2d 186 (1984); *Colonial First Properties v. Henrico Co. Virginia*, 166 F. Supp. 2d 1070 (E.D. Va. 2001).

Bearing these general principles in mind, Younger abstention is appropriate in this case because the following inquiries can be answered in the affirmative: "(1) is there an ongoing state judicial proceeding; (2) do the proceedings implicate important state interests; [and] (3) is there an adequate opportunity in the state proceedings to raise federal claims." *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244 (4th Cir. 1993). In this case, all three

prongs are met. There is an ongoing state court proceeding (but for the removal), there are incredibly important state interests at stake, and there is clearly an adequate opportunity to raise federal claims, although the Plaintiffs contend that they have raised none.

### B. *Pullman* Abstention

In *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Supreme Court held that abstention is appropriate when a court must resolve intricate and unsettled questions of state law before deciding federal constitutional issues. Abstaining under these circumstances permits federal courts to refrain from deciding federal questions and to avoid any conflict with state policies. *Pullman*, 312 U.S. at 500, 61 S.Ct. at 645; *Graham v. County of Albemarle*, 826 F. Supp. 167 (W.D. Va. 1993). *Pullman* abstention is particularly appropriate where, as here, there are unsettled questions of state law that may dispose of the case and avoid the need for addressing any federal constitutional question at all. *See Meredith v. Talbot County*, Md., 828 F.2d 228 (4th Cir. 1987).

Plaintiffs again submit that there is no federal constitutional issue to be decided in this case but, regardless, the case not only involves, but has as its core, intricate and unsettled questions of the Governor's powers the state constitution and state statutory framework. It is certainly one that can and should be disposed of by a state court without the need to adjudicate any federal constitutional issue.

In addition, the present case directly raises a prominent and unsettled question of state constitutional law with respect to Article I, § 13 of the Constitution of Virginia (providing for the right to keep and bear arms). The case law from Virginia state courts interpreting this provision is sparse, and thus its overall contours are unsettled. It is also critical, as the Plaintiffs have

stated in footnote 7 of their Complaint, that the state appellate courts in Virginia have expressly declined to adopt the two-step balancing test applied by some federal appellate courts, including the Fourth Circuit, to cases raising Second Amendment claims. *See Digiacinto v. Rector & Visitors of George Mason Univ.*, 281 Va. 127, 134, 704 S.E.2d 365, 369 (2011); *Prekker v. Commonwealth*, 66 Va. App. 103, 116-17, 782 S.E.2d 604, 610 (Ct. App. Va. 2016). Thus, were this Court to assert its jurisdiction and decide the merits of the present case, it would not only be adjudicating unsettled and significant matters of state law, it would also be faced with the thorny issue of whether to decide them employing tests and frameworks that have been expressly rejected by the state's appellate courts.

### C. *Burford* Abstention.

Abstention is also appropriate under *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is defined as follows: "Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Delmarva Power & Light Co. v. Morrison*, 496 F. Supp. 2d 678 (E.D. Va. 2007).

Although the *Burford* abstention doctrine as defined above is stated in the disjunctive, the present case would satisfy both prongs. At issue in this case is an executive order issued by the Governor of Virginia. The present case presents the difficult questions of applying state law to

13

the tension between a state governor's powers (or asserted powers) in an emergency, under both state statutes and the state constitution, against the limitations on those powers and the conflicting fundamental rights the state's citizens under the state constitution. These matters are obviously ones of substantial public concern. The involvement of a federal court proceeding will indeed disrupt the ongoing process of the state finding a coherent policy on these issues, and which will set a precedent for future, similar questions and disputes.

### D.  28 U.S.C. § 1367(c).

Finally, even if this Court were to determines that it could have jurisdiction over any Second Amendment issue, Federal courts may, pursuant to 28 U.S.C. § 1367(c), "decline to exercise supplemental jurisdiction over [state law] claim[s] if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,…, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). For the reasons already set forth above, this case raises numerous novel and complex issues of state law that should, as a matter of comity and deference, be resolved by the state's courts. It is readily apparent that state law claims predominate, as relief is sought only pursuant to state law, and any argument based on federal law is merely persuasive and informative. This case presents exceptional and compelling circumstances. It is difficult to imagine a more appropriate situation for this Court to decline to exercise its jurisdiction, abstain, and return a case to the state court. Whether the Governor of a state has certain powers under state law, and whether, if he does have such powers, his exercise of such power was excessive and violative of the state's constitution, should be heard by a state court.

### III. PLAINTIFFS ARE ENTITLED TO COSTS, EXPENSES, AND ATTORNEYS' FEES UNDER 28 U.S.C. § 1447(C).

Just this morning, without prior notice, the Commonwealth filed yet another "Notice of Removal" in this Court, this time arguing that this Court has jurisdiction over Plaintiffs' purely state law claims. The Commonwealth's actions constitute an egregious and transparent attempt to derail legitimate state court proceedings in this case, and a hearing now scheduled in Lynchburg Circuit Court tomorrow, April 14, 2020, at 10:00 am. The Commonwealth's rationale for removal is baseless and demonstrates bad faith, and thus are subject to payment of Plaintiffs' attorneys' fees, expenses, and costs. In reality, Defendant's parlor tricks border on sanctionable conduct.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). "Conversely, when an objectively reasonable basis exists, fees should be denied." *Id*. A party seeking fees need not establish that a notice of removal was frivolous. *See id*.

Here, defendants' notice of removal is, at a minimum, bordering on the frivolous. Defendants' entire theory of removal jurisdiction rests upon the bogus notion that Plaintiffs are *really* presenting a federal question, when in fact, the complaint rests exclusively on the Virginia Constitution and statutes, and expressly disclaims bringing a federal constitutional question. If

15

Plaintiffs had filed their complaint in federal court, it would have been subject to dismissal for want of federal question jurisdiction.

Fees are particularly warranted because of the Defendants' blatant effort to delay proceedings. After Plaintiffs filed the present complaint without a federal question, seeking an temporary injunction, the circuit court scheduled a hearing for tomorrow (Tuesday) morning to hear the case as quickly as possible. Defendants filed their objectively unreasonable motion to remove to avoid the Tuesday hearing in state court, stating that they would file a response to the complaint within the time period listed in Rule 81(c)(2) — which is 21 days from receipt of the complaint. Defendants have no desire to resolve this matter quickly, and instead using removal as a dilatory tactic to prevent resolution of the matter until after Executive Order No. 53 has expired on April 23, 2020.

As the Supreme Court explained, "[t]he process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources.... The appropriate test for awarding fees under § 1447(c) should recognized the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party...." *Martin* at 140.

The Commonwealth incorrectly accuses Plaintiffs of "gamesmanship" by not bringing a Second Amendment claim. *See* Notice of Removal at 3. Actually, in these circumstances, an award of attorneys' fees is appropriate to shift the cost of this unnecessary motions practice to defendants and to deter other defendants from engaging in its dilatory filing — a true act of gamesmanship.

16

It is black letter law that a plaintiff is the master of his complaint. Here, the Commonwealth attempts to characterize Plaintiffs' complaint to include a federal question that Plaintiffs have expressly disclaimed, in order to shoehorn Plaintiffs' case into federal court. In doing so, the Commonwealth seeks to avoid a state court ruling on what are quintessentially state constitutional and statutory issues. This Court should reject the Commonwealth's naked attempts to derail Plaintiffs' ability to have their day in court (tomorrow) and remand this case to state court where it properly belongs.

Dated: April 13, 2020

Respectfully submitted,

By: */s/ David G. Browne*

David G. Browne (VSB No. 65306)
Spiro & Browne, PLC
6802 Paragon Place, Suite 410
Richmond, VA  23230
Telephone: 804-573-9220
Email: dbrowne@sblawva.com

William J. Olson (VSB No. 15841)
Robert J. Olson (VSB No. 82488)
Herbert W. Titus (VSB No. 41126)
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA  22180
Telephone: 703-356-5070
114 Creekside Lane
Winchester, VA  22602
Telephone: 540-450-8777
Email: wjo@mindspring.com

*Counsel for Plaintiffs*
LYNCHBURG RANGE & TRAINING, LLC,
VIRGINIA CITIZENS DEFENSE LEAGUE,
GUN OWNERS OF AMERICA, INC., AND
ASSOCIATION OF VIRGINIA GUN RANGES

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 13th day of April 2020, a true and accurate copy of the foregoing Memorandum of Points and Authorities in Support of Emergency Motion to Remand Case to State Court was filed via the ECF system and served thereby on all parties receiving notice via the ECF system.

                                                  */s/ David G. Browne*