IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

| | | |
|---|---|---|
| LYNCHBURG RANGE & TRAINING, LLC et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:20-cv-00020-NKM |
| | ) | |
| HON. RALPH S. NORTHAM et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANTS' MEMORANDUM OF LAW
<u>IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

ARGUMENT ..................................................................................................................... 3

   I.    This Court has jurisdiction over Plaintiffs' right-to-bear-arms claim ............................. 4

       A.   The Supreme Court has long held that certain claims seeking relief under state law nonetheless create federal-question jurisdiction ............................................. 4

       B.   Plaintiffs' right-to-bear-arms claim satisfies the *Gunn* test ..................................... 5

           1.   Plaintiffs' right-to-bear arms claim necessarily raises a federal issue ......... 5

           2.   The other *Gunn* factors are satisfied ......................................................... 13

   II.    The Court should not abstain ......................................................................................... 15

   III.   The Court should deny Plaintiffs' request for fees and costs ....................................... 157

CONCLUSION ................................................................................................................. 21

CERTIFICATE OF SERVICE .......................................................................................... 22

# TABLE OF AUTHORITIES

Page

**Cases**

*Adams v. Alliant Techsystems Inc.*,
  No. CIV.A.7:99CV00813, 2002 WL 47901 (W.D. Va. 2002) ................................................ 16

*Beaver v. Bridwell*,
  598 F. Supp. 90 (D. Md. 1984) ................................................................................................ 15

*Bracey v. Board of Education of City of Bridgeport*,
  368 F.3d 108 (2d Cir. 2004) ............................................................................................... 9, 18

*Commonwealth of Va. ex rel. Kilgore v. Bulgartabac Holding Grp.*,
  360 F. Supp. 2d 791 (E.D. Va. 2005) ...................................................................................... 16

*Cooper v. Aaron*,
  358 U.S. 1 (1958) ..................................................................................................................... 12

*DiGiacinto* v. *Rector & Visitors of George Mason Univ.*,
  704 S.E.2d 365 (Va. 2011) .................................................................................................... 5, 6

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) ............................................................................................................... 7, 8

*Dixon v. Coburg Dairy, Inc.*,
  369 F.3d 811 (4th Cir. 2004) ........................................................................................ 9, 10, 14

*Educational Servs., Inc. v. Maryland State Bd. for Higher Educ.*,
  710 F.2d 170 (4th Cir. 1983) .................................................................................................... 17

*Fitzgerald v. Racing Ass'n of Central Ia.*,
  539 U.S. 103 (2003) ................................................................................................................... 7

*Gannett Co., Inc. v. Clark Const. Grp., Inc.*,
  286 F.3d 737 (4th Cir. 2002) .................................................................................................... 15

*Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*,
  556 F.3d 459 (6th Cir. 2009) .................................................................................................... 15

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
  545 U.S. 308 (2005) ......................................................................................................... passim

*Gunn v. Minton*,
  568 U.S. 251 (2013) ......................................................................................................... passim

*Herald Co. v. McNeal*,
  553 F.2d 1125 (8th Cir. 1977) .................................................................................................. 17

*In re Mills*,
  287 Fed. Appx. 273 (4th Cir. 2008) ......................................................................................... 17

*James v. City of Boise*,
  136 S. Ct. 685 (2016) ................................................................................................................. 6

*LeFande v. Moore*,
No. 1:10-CV-001 AJT/TRJ, 2010 WL 2163857 (E.D. Va. May 26, 2010) ........................... 16

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005) ............................................................................................................. 18, 19

*Martin v. Hunter's Lessee*,
14 U.S. 304 (1816) ...................................................................................................................... 12

*Martin v. Stewart*,
499 F.3d 360 (4th Cir. 2007) ..................................................................................................... 17

*McDonald v. Chicago*,
561 U.S. 742 (2010) ...................................................................................................................... 7

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*,
478 U.S. 804 (1986) .................................................................................................................... 14

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*,
136 S. Ct. 1562 (2016) ................................................................................... 8, 11, 13, 18

*Nieves v. Barlett*,
139 S. Ct. 1715 (2019) ................................................................................................................ 20

*Pennsylvania v. Muniz*,
496 U.S. 582 (1990) ...................................................................................................................... 7

*Recupero v. New England Tel. & Tel. Co.*,
118 F.3d 820 (1st Cir. 1997) ...................................................................................................... 10

*Sullivan v. City of Dexter*,
No. 4:04-CV-114-JEG, 2005 WL 615756 (S.D. Iowa, Mar. 11, 2005) ........................... 12, 13

*Szymecki v. City of Norfolk*,
No. 2:08CV142, 2008 WL 11441863 (E.D. Va. Dec. 1, 2008) ................................................ 14

*Tafflin v. Levitt*,
493 U.S. 455 (1990) .................................................................................................................... 11

*Townes Telecomms., Inc. v. National Telecomms. Cooperative Ass'n*,
391 F. Supp. 3d 585 (E.D. Va. 2019) ....................................................................................... 15

*United Mine Workers of Am. v. Gibbs*,
383 U.S. 715 (1966) .................................................................................................................... 10

*Wisconsin Right to Life State Political Action Comm. v. Barland*,
664 F.3d 139 (7th Cir. 2011) ..................................................................................................... 16

*Woollard v. Gallagher*,
712 F.3d 865 (4th Cir. 2013) ..................................................................................................... 14

**Constitional Provisions**

U.S. Const. art. III, § 2 ................................................................................................................. 7

U.S. Const. amend. I ................................................................................................................ 9, 10

iii

U.S. Const. amend. II ............................................................................................. passim

U.S. Const. amend. XIV ................................................................................................. 6

Va. Const. art. I, § 13 ............................................................................................ passim

**Statutes**

28 U.S.C. § 1331 .......................................................................................... 1, 4, 8, 17

28 U.S.C. § 1367 ............................................................................................................ 1

28 U.S.C. § 1367(c) ..................................................................................................... 17

28 U.S.C. § 1441(a) ....................................................................................................... 4

28 U.S.C. § 1446(b) ..................................................................................................... 19

28 U.S.C. § 1447(a) ..................................................................................................... 19

28 U.S.C. § 1447(c) ..................................................................................... 17, 18, 21

42 U.S.C. § 1983 ..................................................................................... 9, 14, 15, 18

42 U.S.C. § 1988(b) ..................................................................................................... 18

Va. Code Ann. § 44-146.15(3) ....................................................................................... 2

**Rules**

Fed. R. Civ. P. 41 ........................................................................................................... 2

**Treatises**

A.E. Dick Howard,
   *Commentaries on the Constitution of Virginia* (1974) ............................................. 6

Erwin Chemerinsky*,*
   *Federal Jurisdiction* (6th ed. 2012) ...................................................................... 16

## INTRODUCTION

Important federal questions will not be kept out of federal court "simply because they appear in state raiment." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (*Grable*). That sort of re-costuming is exactly what Plaintiffs attempt here. Despite purporting to disclaim their earlier pleas for relief under federal law, Plaintiffs do not concede that the challenged Executive Order complies with the Second Amendment rules that are binding on state and federal courts. And because Plaintiffs specifically acknowledge that the right to keep and bear arms protected by the state constitution is *coextensive* with that protected by the federal, a court could neither accept nor reject Plaintiffs' right-to-bear-arms claim without *necessarily* rendering a decision about the meaning of federal law.

Plaintiffs cannot have it both ways. If they are determined to stay out of federal court, Plaintiffs may stipulate that the challenged Executive Order complies with federal law and make clear that they are asserting only that it violates provisions of state law that go *beyond* the federally mandated floor. But unless Plaintiffs disclaim—or this Court finds that Plaintiffs have already disclaimed—any suggestion that the challenged Order violates the Second Amendment, this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1367. The motion to remand should therefore be denied.

## PROCEDURAL HISTORY

On March 23, 2020, Governor Ralph S. Northam issued Executive Order 53 in response to the public-health emergency caused by COVID-19. That Order imposed numerous restrictions on individuals and businesses throughout Virginia and required the temporary "[c]losure of all public access to" certain businesses, including "indoor shooting ranges." ECF No. 1-2 at 4 ¶ 4.

Fifteen days later, Plaintiffs filed their first suit in state court. In that complaint, Plaintiffs specifically alleged that Executive Order 53's temporary restriction on the operation of indoor

1

shooting ranges violated "their constitutionally protected right to keep and bear arms" as protected by both the Virginia and the United States Constitutions. ECF No. 1-3 ¶ 82.

Plaintiffs emailed their pleading to counsel for Defendants on April 8. That same day, Defendants removed the action to this Court, ECF No. 1-4, and Plaintiffs filed a notice of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41, ECF No. 1-5.

The next day, Plaintiffs re-filed their challenge in the same state trial court. ECF No. 1-1. As a redline comparison shows, the re-filed complaint is a nearly verbatim copy of Plaintiffs' original complaint and continues to rely on Second Amendment jurisprudence throughout. See ECF No. 1-6. As before, Plaintiffs claim that Executive Order 53 violates "their constitutionally protected right to keep and bear arms." ECF No. 1-1 ¶ 82. As before, Plaintiffs allege that the Order is ultra vires because the statute empowering the Governor to act in emergencies states that such orders may not infringe "the rights of the people to keep and bear arms as guaranteed by Article I, Section 13 of the Constitution of Virginia *or the Second Amendment of the Constitution of the United States*." ECF No. 1-1 ¶ 41 (quoting Va. Code Ann. § 44-146.15(3)) (emphasis added); ECF No. 1-3 ¶ 41 (same). As before, Plaintiffs claim that the Order is "inconsistent with the federal government's designation of shooting ranges as essential critical infrastructure." ECF No. 1-1, p. 23 (capitalization and emphasis removed); ECF No. 1-3, p. 23 (same). Although the re-filed complaint purports to disclaim seeking any "determination pursuant to . . . the Second Amendment," ECF No. 1-1 ¶ 48 n.3, it continues to acknowledge that "the federal and Virginia constitutional provisions" protecting "the right to keep and bear arms generally have been viewed as having the same scope and meaning," *id.* ¶ 49; accord ECF No. 1-3 ¶ 49 (same). And, just like the original complaint, in discussing the scope of the constitutional right to keep and bear arms (as opposed to the parallels between state and federal law), the re-

filed complaint relies almost exclusively on federal court decisions construing the Second Amendment. ECF No. 1-1 ¶¶ 48–57; accord ECF No. 1-3 ¶¶ 48–57 (same).

On the day Plaintiffs re-filed in state court, counsel for Defendants was representing the Governor in an emergency hearing in a different case challenging other aspects of the Governor's COVID-19 response. See *Hughes v. Northam*, No. CL20000415-00 (Russell Cty. Cir. Ct.). The plaintiff in that suit sought a temporary injunction permitting him to attend in-person services on Easter (then three days away), and counsel was anticipating the possibility of filing or opposing any emergency appeal in the Supreme Court of Virginia.

After reviewing Plaintiffs' re-filed complaint, Defendants undertook to determine whether the case still presented adequate grounds for removal. Having determined it did, Defendants filed removal documents on the morning of Monday, April 13—the first business day after the holiday. ECF No. 1. Hours later, Plaintiffs filed a motion to remand, ECF No. 2, and sought a hearing for the same day, ECF No. 4. This Court obliged, convening a hearing less than 90 minutes after Plaintiffs filed a brief in support of the motion to remand. ECF No. 5.

## ARGUMENT

Our position is straightforward:

- Regardless of how a claim is labeled, binding precedent makes clear that federal courts have jurisdiction if resolution of that claim *necessarily* turns on a disputed and important issue of federal law.

- If X = Y, resolving whether Z violates Y *necessarily* resolves whether Z violates X.

- Because Virginia law clearly establishes that Article I, § 13's protection of the right to keep and bear arms (Y) is co-extensive with and extends no farther than the Second Amendment "floor" that would be binding on the States in any event (X), resolution of Plaintiffs' right-to-bear arms claim (Z) will *necessarily* entail a determination of whether Executive Order 53 violates the federal constitution.

I.      **This Court has jurisdiction over Plaintiffs' right-to-bear-arms claim**

    A.      **The Supreme Court has long held that certain claims seeking relief under state law nonetheless create federal-question jurisdiction**

Federal law permits removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Section 1331, in turn, grants district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Although federal-question jurisdiction is most often invoked in situations where a plaintiff's cause of action is "created by federal law," "[t]here is . . . another longstanding . . . variety of federal 'arising under' jurisdiction" that has been "recognized for [over] 100 years." *Grable*, 545 U.S. at 312. "The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* To be sure, the "mere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door." *Id.* at 313. The Court has been equally clear, however, that important federal questions will "not [be] kept . . . out simply because they appeared in state raiment." *Id.* at 314.

The Supreme Court has articulated a four-part test to determine when "federal jurisdiction over a state law claim will lie." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Under that test, jurisdiction exists "if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.*; see *Grable*, 545 U.S. at 313 (removal appropriate where a claim "really and substantially involv[es] a dispute or controversy respecting the validity, construction or effect of [federal] law") (quotation marks omitted; alterations in original).

4

**B.      Plaintiffs' right-to-bear-arms claim satisfies the *Gunn* test**

Plaintiffs' assertion that Executive Order 53 violates their "right to keep and bear arms" (ECF No. 1-1 ¶ 82) satisfies all of the *Gunn* factors. Because Article I, § 13 of the Virginia Constitution is co-extensive with the Second Amendment, resolution of Plaintiffs' right-to-bear arms claim necessarily requires addressing the scope of the Second Amendment. Whether those rights have been violated is actually disputed—indeed, it is the centerpiece of the parties' disagreement. The matter is also substantial to the federal system and its review by this Court will not upset the allocation of judicial responsibility between federal and state courts.

*1.      Plaintiffs' right-to-bear arms claim necessarily raises a federal issue*

The crux of the remand question involves the first element under *Gunn*—whether a federal issue is "necessarily raised" by Plaintiffs' facially state-law-based claims. 568 U.S. at 258. Contrary to Plaintiffs' contention, that element is satisfied here.

a.      It is common ground in this case that Article I, § 13 of the Virginia Constitution has "the same scope and meaning" as the Second Amendment. ECF No. 1-1 ¶ 49; accord ¶ 48 ("The Virginia Constitution is quite similar to the Second Amendment to the U.S. Constitution."); ¶ 50 ("Certainly, the rights of Virginians can be no *less* expansive than under the Second Amendment to the United States Constitution.") (emphasis added). As Plaintiffs acknowledge (at ¶ 50), the Virginia Supreme Court has held that "the protection of the right to bear arms expressed in Article I, § 13 of the Constitution of Virginia is co-extensive with the rights provided by the Second Amendment of the United States Constitution." *DiGiacinto* v. *Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 369 (Va. 2011); accord Mem. of P. & A. in Supp. of Pls.' Emergency Mot. to Remand Case to State Ct. (ECF No. 3) (Memorandum) at 7 (again acknowledging that "the two rights have been found to be co-extensive"); Hr'g Tr. (Apr. 13, 2020), Mot. to Remand 8:19–21 ("Virginia state courts have held that Article I, Section 13 of

5

the state Constitution and the Second Amendment are coextensive in nature"), 24:13–14 ("these similar state and federal constitutional provisions are coextensive").

The Executive Director of the Virginia Commission on Constitutional Revision and the author of the leading commentary on the Virginia Constitution agrees. "The guarantees inhering in the first part of [Article I], section 13, dealing with the right of the citizenry to bear arms in their own defense," he observes, "are substantially identical to the rights founded in the Second Amendment." A.E. Dick Howard, *Commentaries on the Constitution of Virginia* 274 (1974). Nor is that accidental, because "[i]t was to the Second Amendment and its judicial interpretation that the 1969 legislative session looked in adding this language to section 13" and the drafters specifically "chose to incorporate the specific language of the Second Amendment of the United States Constitution into the existing framework of the Virginia document." *Id.* at 273–74.

Under the Supremacy Clause, state courts cannot diverge from—or provide any less protection than—the United States Supreme Court's interpretations of the Second Amendment. *James v. City of Boise*, 136 S. Ct. 685, 686 (2016) ("The Idaho Supreme Court, like any other state or federal court, is bound by this Court's interpretation of federal law."). And because the Virginia Supreme Court has *already* determined that the right to keep and bear arms protected by the Virginia Constitution is "co-extensive" with the Second Amendment, *DiGiacinto*, 704 S.E.2d at 369, any conclusion about whether a challenged restriction fails or satisfies Article I, § 13 will *necessarily* reflect a judgment about whether that same restriction fails or satisfies the Second Amendment. See *id.* (analyzing "state constitutional rights and his federal constitutional rights concurrently"). In keeping with that approach, Plaintiffs rely almost exclusively on decisions by the United States Supreme Court and federal courts of appeals and specifically note that the "Second Amendment [is] made applicable to the states under the Fourteenth Amendment." ECF

No. 1-1 ¶ 52 n. 6 (citing *McDonald v. Chicago*, 561 U.S. 742 (2010)); see also ¶¶ 53–55 (citing decisions from the Second and Seventh Circuits).

The United States Supreme Court's treatment of its ability to review state-court judgments is highly instructive. There too, the Court lacks jurisdiction to review purely state law issues—only those "arising under" federal law. U.S. Const. art. III, § 2. And, in that context, the Court has specifically held that, where a state constitutional provision offers a protection that is "identical to that provided by the [federal constitution]," "[t]he decision . . . does not rest on an independent and adequate state ground" and the Court may consider the federal claim. *Pennsylvania v. Muniz*, 496 U.S. 582, 588 n.4 (1990); accord *Fitzgerald v. Racing Ass'n of Central Ia.*, 539 U.S. 103, 106 (2003) (state law ground for decision is not independent from a federal one where state courts are instructed to "apply the same analysis in considering the state [constitutional] claims as . . . in considering the federal [constitutional] claim").

For the same reasons it was impossible in *Muniz* and *Fitzgerald* to separate the state-law grounds for decision from federal grounds, here it is impossible to separate Plaintiffs' state constitutional claim from the federal claim they have purported to abandon. If Plaintiffs' near exclusive reliance on cases interpreting the Second Amendment were not enough to show that Plaintiffs' re-filed claims are essentially federal in nature, a comparison of the original and re-filed complaints removes any doubt. See ECF No. 1-6 (redline). To highlight just one example, Plaintiff's original complaint asserted that:

> Classifying shooting ranges as places of "public amusement" is entirely arbitrary and capricious, and fails to consider that safety measures, such as social distancing, can be implemented without infringing Second Amendment rights. Indeed, as the Supreme Court said, "[t]he very enumeration of the right takes out of the hands of government . . . the power to decide on a case-by-case basis whether the right is really worth insisting upon."

ECF No. 1-3 ¶ 56 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 634 (2008)).

In their re-filed complaint, Plaintiffs continue to argue—including the same direct

quotation from the Supreme Court's decision in *Heller*—that:

> Classifying shooting ranges as places of "public amusement" is entirely arbitrary
> and capricious, and fails to consider that safety measures, such as social
> distancing, can be implemented without infringing on Article I, § 13 of the
> Virginia Constitution. As the Supreme Court said in discussing the federal
> constitutional provision protecting firearms — "[t]he very enumeration of the
> right takes out of the hands of government. . . the power to decide on a case-by-
> case basis whether the right is really worth insisting upon."

ECF No. 1-1 ¶ 56 (quoting *Heller*, 554 U.S. at 634); see also pp. 2–3, *supra*.

Plaintiffs' late-arriving attempt to "avoid federal jurisdiction," Hr'g Tr. 4:12, by cloaking

their right-to-bear-arms claim solely "in state raiment" does not change its essentially federal

character, *Grable*, 545 U.S. at 314. Indeed, the Supreme Court has emphasized that state-law

causes of action that duplicate federal rights "necessarily raise" questions of federal law for

purposes of Section 1331. In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct.

1562 (2016) (*Merrill Lynch*), for example, the Court hypothesized a state law "mak[ing] illegal

'any violation of [federal securities laws].'" *Id.* at 1569. Such a state-law cause of action, the

Court explained, could properly be heard in federal court "because the claim's very success

[would] depend[] on giving effect to a federal requirement," and thus the plaintiff "must

undertake to prove, as the *cornerstone* of his suit, that the defendant infringed a requirement of"

*federal* law. *Id.* at 1569–70 (emphasis added).

So too here. Although Article I, Section 13 of the Virginia Constitution does not directly

reference the Second Amendment, the Virginia provision intentionally contains the same

operative language as the federal provision and has been interpreted as co-extensive with and

extending no farther than the Second Amendment. See pp. 5–6, *supra*. For that reason—just as

with the hypothetical posited in *Merrill Lynch*—Plaintiffs' "very success" on their right-to-bear

arms claim "depends on giving effect to a federal [right]." 136 S. Ct. at 1570.

8

b.      Although the Fourth Circuit has not directly addressed the issue of co-extensive state and federal rights, the Second Circuit has concluded that a claimed violation of such a state-law right confers federal jurisdiction. In *Bracey v. Board of Education of City of Bridgeport*, 368 F.3d 108 (2d Cir. 2004), that court considered whether removal was appropriate where the plaintiff alleged a violation of a Connecticut statute prohibiting public employers from discharging an employee for exercising his rights under the United States Constitution or the state constitution. The Second Circuit held that the federal courts had jurisdiction because, in the circumstances of the case, the Connecticut statute paralleled 42 U.S.C. § 1983. And because the "vindication of [the plaintiff's] state-law rights [would] require[] . . . a court [to] construe federal First Amendment law and evaluate its scope," the Second Circuit concluded that the plaintiff's complaint necessarily raised an issue of federal law. *Id.* at 116.

This conclusion is consistent with the Fourth Circuit's decision in *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811 (4th Cir. 2004) (en banc). In that case, the Court stated that "[a] plaintiff's right to relief for a given claim necessarily depends on a question of federal law only when *every* legal theory supporting the claim requires the resolution of a federal issue." *Id.* at 816. On the facts presented, the Court concluded that the standard was not satisfied where a plaintiff's wrongful-termination claim was supported by three separate legal theories, only one of which required the resolution of a federal issue: "(1) Dixon was fired because of his political opinions [and thus his firing violated South Carolina's 'public policy']; (2) Dixon was fired for exercising political rights guaranteed by the United States Constitution; and (3) Dixon was fired for exercising political rights guaranteed by the South Carolina Constitution." *Id.* at 818. "Because Dixon could prove that [the defendant] terminated him in violation of [the relevant state law] without proving the second theory," the Fourth Circuit held that Dixon's ability to

9

prove his claim did "not necessarily depend on a question of federal law." *Id.*[1]

This case differs from *Dixon* in at least two material respects. For one thing, the *Dixon* Court did not consider whether the rights conferred under the free-speech provision of the South Carolina Constitution duplicated the First Amendment to the United States Constitution—most likely because the argument does not appear to have been raised. Here, in contrast, the parties agree that the right protected by the state constitution is "co-extensive" with that protected (and thus mandated) by the federal. Memorandum at 7; see pp. 5–6, *supra*. For that reason, here, unlike in *Dixon*, Plaintiffs "*could [not]* prove that" the challenged Executive Order violates the state constitutional right to keep and bear arms "without proving" that it *also* violates the federally protected right. *Dixon*, 369 F.3d at 818 (emphasis added).

The Fourth Circuit's opinion in *Dixon* also makes clear why any such argument in that case would have been unavailing. As the Court explained, the plaintiff in *Dixon* could have prevailed under a *third* theory—one that would not have implicated his rights under *either* the federal or state constitutions. See *Dixon*, 369 F.3d at 818. Here, in contrast, because Plaintiffs assert no independent theory in support of their right-to-bear-arms claim, that claim necessarily requires resolution of an issue of federal constitutional law—namely, the scope and meaning of the Second Amendment to the United States Constitution.[2]

---

[1] The *Dixon* Court also separately concluded that any federal issue was "not substantial" and thus failed to satisfy the third *Gunn* factor. 369 F.3d at 818–19. Here, in contrast, that factor is plainly satisfied as well. See pp. 13–14, *infra*.

[2] Any suggestion that Plaintiffs' "claim" should be viewed as encompassing all of their various arguments about why Executive Order 53 should be enjoined would be unavailing. It is a basic principle of federal subject-matter jurisdiction that there is a difference between the overall "case" and the various "claims" brought in support of it. See, *e.g.*, *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966); *Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 828 (1st Cir. 1997) ("A central characteristic of federal jurisdiction is that it tends to be claim-based, and thus specific to claims, rather than case-based, and thus general to an entire case if the court has

c.      Plaintiffs' scattershot arguments for why their right-to-bear-arms claim does not necessarily raise a federal issue fundamentally misstate the nature of the relevant inquiry. The question is not, as Plaintiffs suggest, whether they were legally obligated to bring a freestanding federal claim or whether a state court could have properly adjudicated this suit. See, *e.g.*, Memorandum at 5, 7–9. Of course no party is ever legally required to seek relief on any particular basis, and state courts are presumptively competent to hear claims arising under both state and federal law. See, *e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 459 (1990). But that is not what "necessarily raised" means in this context. The fact that Plaintiffs were allowed to file in state court says nothing about whether Defendants were allowed to remove.

Plaintiffs' failure to grapple with—or even acknowledge—the doctrine articulated in *Grable, Gunn,* and *Merrill Lynch* also explains why they wrongly insist (Memorandum at 8) that the rule against defeating federal jurisdiction by failing to plead necessary federal claims is limited to the preemption context. *None* of the statutes involved (or hypothesized) in those cases involved state-law claims preempted by federal law. See *Grable*, 545 U.S. at 310 (jurisdiction over state quiet-title action because of embedded question of federal tax law); *Gunn*, 568 U.S. at 253, 258 (no jurisdiction over state-law malpractice claim with alleged embedded question of federal patent law); *Merrill Lynch*, 136 S. Ct. at 1569–70 (jurisdiction over hypothetical state tort suit alleging violation of federal securities laws). The scope of these foundational cases therefore makes clear that the principle applies more broadly than Plaintiffs acknowledge.

Plaintiffs' suggestion that cases interpreting the Second Amendment would provide only "persuasive value" in adjudicating their right-to-bear-arms claim (Memorandum at 9) also misapprehends the "necessarily raised" inquiry. Because Plaintiffs acknowledge that the right to

---

jurisdiction over any claim."). Here, the relevant question is whether this Court has subject-matter jurisdiction over Plaintiffs' right-to-bear-arms claim.

keep and bear arms protected by the Virginia Constitution is "co-extensive" with the Second Amendment (Memorandum at 7)—in other words, that any violation of Article I, § 13 is, *ipso facto*, a violation of the Second Amendment and vice versa—Supreme Court interpretations of the Second Amendment are not just *persuasive*, they are *binding*. See, *e.g.*, *Cooper v. Aaron*, 358 U.S. 1 (1958); *Martin v. Hunter's Lessee*, 14 U.S. 304 (1816). Contrary to Plaintiffs' contention, a Virginia court *could not* find that the Second Amendment "provide[s] greater protections than the [United States Supreme Court] think[s]" it does (Memorandum at 8), nor could a Virginia court interpret the Virginia Constitution's right-to-bear-arms provision without simultaneously rendering an opinion on the scope and meaning of the Second Amendment.[3]

Plaintiffs' late-breaking reliance on an unreported 15-year-old district court decision from Iowa fails for similar reasons. At oral argument, Plaintiffs cited *Sullivan v. City of Dexter*, No. 4:04-CV-114-JEG, 2005 WL 615756 (S.D. Iowa, Mar. 11, 2005), as their "strongest case" (Hr'g Tr. 23:5–22) given that court's conclusion that "the use of federal law as persuasive authority in advancing [plaintiffs'] state law theory [did not] create[] federal jurisdiction." 2005 WL 615756 at *4. But in *Sullivan*—unlike here—there was no agreement that the relevant state and federal constitutional rights were co-extensive such that any resolution of the state-law claim necessarily turned on federal law. Instead, the defendants argued that the plaintiff *must have* been asserting a federal claim because she relied on a right *not recognized* in state constitutional law (there, the right to travel). See *id.* at *3. The court, however, accepted the plaintiff's argument that she did not intend to assert a federal claim and instead sought to expand Iowa law by persuading the

---

[3] The fact that a Virginia court could, in principle, "decide at a later date" that the Virginia Constitution "actually provides greater protections of the right to keep and bear arms" (Memorandum at 8) is immaterial in *this* case. Plaintiffs do not contend that their right to relief depends on the Virginia provision being more expansive than the Second Amendment—indeed, they have specifically disavowed any such argument. See ECF No. 1-1 ¶¶ 48–50; accord pp. 5–6, *supra* (quoting Plaintiffs' repeated acknowledgements that the two rights are "co-extensive").

state courts to recognize a right to intra-city travel. *Id.* In *Sullivan*, therefore, federal decisions, including from the United States Supreme Court, were merely persuasive as to the (potentially greater) reach of the Iowa Constitution. Here, by contrast, because Plaintiffs concede that the state and federal rights are "co-extensive," see pp. 5–6, *supra*, United States Supreme Court decisions interpreting the Second Amendment constitute binding precedent. For that reason, *Sullivan* is inapposite.[4]

> 2. *The other* Gunn *factors are satisfied*

a.      The second *Gunn* factor is whether the federal issue inherent in a state-law claim is "actually disputed." 568 U.S. at 258. That requirement is easily satisfied here. Plaintiffs allege that the temporary closure of indoor shooting ranges as part of the Commonwealth's broader COVID-19 response violates their constitutional right to keep and bear arms. Governor Northam and Colonel Settle strongly disagree. No more is required.

b.      The third *Gunn* factor is whether the "federal issue" necessarily raised by a plaintiff's state-law claim is "substantial." 568 U.S. at 258. Here too, the inquiry is not dictated by a plaintiff's efforts to plead around federal jurisdiction. Instead, the factor looks to whether the underlying legal question is, itself, substantial "to the federal system as a whole." *Id.* at 260.

That standard is readily met here. The Second Amendment restrains both federal and state action throughout the Nation, and judicial interpretations of its meaning have implications for innumerable laws and regulations. Plaintiffs seek to enjoin an Order issued to stem the spread of a contagious and deadly disease based on a legal theory that would expand the right to bear arms beyond that recognized in any binding precedent. The alleged constitutional violation is at

---

[4] Like Plaintiffs, *Sullivan* also wrongly suggested that the "artful pleading" doctrine is limited to cases involving federal preemption. 2005 WL 615756, at * 4. Unlike Plaintiffs, however, the *Sullivan* court's error can be readily explained by the fact that its decision predated the Supreme Court's later decisions in *Grable*, *Gunn*, and *Merrill Lynch*.

the heart of an ongoing dispute between the parties and is by no means "hypothetical." *Gunn*, 568 U.S. at 261 (finding question of patent law embedded in state-law malpractice claim not "substantial" because it would be evaluated in hypothetical terms). Moreover, as reflected in Plaintiffs' failure to cite any significant Virginia law on the question, federal courts have considerably more experience reviewing claims arising under the Second Amendment.

It is also relevant that Plaintiffs clearly could have brought their claims directly in federal court. In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), the Supreme Court explained that the absence of a federal remedy for complained-of conduct "is tantamount to a congressional conclusion" that a claimed federal issue is "insufficiently 'substantial' to confer federal-question jurisdiction." *Id.* at 814. Here, in contrast, Congress *has* created a private right of action to enjoin state officials from violating federal constitutional rights—42 U.S.C. § 1983. Indeed, that provision has frequently been used to assert claims under the Second Amendment in federal courts, including in this circuit.[5] Compare *Dixon*, 369 F.3d at 819 (federal issue not "substantial" where "Congress . . . created a private cause of action to remedy violations of the rights secured by the United States Constitution but that remedy [was] unavailable to [the plaintiff], because [he was] not terminate[d] . . . under color of state law") (citation omitted). For that reason as well, the constitutional issue is "substantial . . . to the federal system as a whole." *Gunn*, 568 U.S. at 260.

c.      The final *Gunn* factor is whether federal resolution of the claim raising the disputed federal issue would upset "the appropriate balance of federal and state judicial responsibilities." 568 U.S. at 264. Here, it would not.

---

[5] See, *e.g.*, *Woollard v. Gallagher*, 712 F.3d 865, 870 (4th Cir. 2013) (plaintiffs asserted violation of Second Amendment in federal court under Section 1983); *Szymecki v. City of Norfolk*, No. 2:08CV142, 2008 WL 11441863, at *1 (E.D. Va. Dec. 1, 2008) (similar).

"[R]esolution of the fourth factor [of the *Gunn* test] essentially turns on the third, as whether an issue is important to the federal system as a whole largely determines whether its resolution by a federal court is appropriate or risks disrupting the federal-state balance." *Townes Telecomms., Inc. v. National Telecomms. Cooperative Ass'n*, 391 F. Supp. 3d 585, 595 (E.D. Va. 2019). As just explained, the scope and meaning of the Second Amendment is "substantial" to the federal system within the meaning of *Gunn.* And nothing about the exercise of federal jurisdiction here would "open the federal courthouse doors to a host of traditionally state court actions." *Townes Telecomms.*, 391 F. Supp. 3d at 595. Claims seeking to enjoin state officials from alleged violations of the Second Amendment are routinely brought in federal court under Section 1983, see p. 14, *supra*, and treating this case in kind will not disrupt any traditional balance of judicial responsibility.

## II.    The Court should not abstain

In a last-ditch effort to avoid a federal forum, Plaintiffs contend that even if subject-matter jurisdiction exists, this Court should decline to exercise it. See Memorandum at 11–14. None of Plaintiffs' arguments carry their burden on this point. See *Answers in Genesis of Kentucky, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009) (stating that a party seeking abstention must show requirements are satisfied); see also *Beaver v. Bridwell*, 598 F. Supp. 90, 95 (D. Md. 1984) (similar).

As a threshold matter, Plaintiffs' abstention arguments ignore the "virtually unflagging obligation" of federal courts to "exercise the jurisdiction given them." *Gannett Co., Inc. v. Clark Const. Grp., Inc.*, 286 F.3d 737, 741 (4th Cir. 2002). Given that weighty obligation, "abstention from the exercise of federal jurisdiction is the exception, not the rule." *Id.*

Although Plaintiffs briefly identify three different abstention doctrines, their cursory

15

arguments make clear none is a good fit. For one thing, both *Younger* and *Burford* abstention require a parallel state proceeding—either judicial or administrative—neither of which exist here. See *Commonwealth of Va. ex rel. Kilgore v. Bulgartabac Holding Grp.*, 360 F. Supp. 2d 791, 797 (E.D. Va. 2005) ("removed case cannot satisfy the threshold facet of *Younger* abstention"); *Adams v. Alliant Techsystems Inc.*, No. CIV.A.7:99CV00813, 2002 WL 47901, at *3 (W.D. Va. 2002) ("The focus of *Burford* abstention is to avoid needless conflict with state administrative proceedings.").[6]

Nor does *Pullman* abstention apply. For resort to that doctrine to be warranted, there must be *both*: (1) "substantial uncertainty as to the meaning of the state law," *and* (2) "a reasonable possibility that the state court's clarification of state law might obviate the need for a federal constitutional ruling." Erwin Chemerinsky, *Federal Jurisdiction* 818 (6th ed. 2012); accord *Wisconsin Right to Life State Political Action Comm. v. Barland*, 664 F.3d 139, 150 (7th Cir. 2011) (similar). Even where those threshold requirements are satisfied, moreover, "[t]he preferable approach" is for "federal courts to hear the case" where "substantial reasons for avoiding abstention" exist. Chemerinsky 823.

Plaintiffs have failed to make either showing and the decidedly federal nature of Plaintiffs' right-to-bear arms claim would counsel strongly against *Pullman* abstention in any event. *First*, although Plaintiffs claim that the "overall contours" of Virginia's right to bear arms "are unsettled," Memorandum at 12, Virginia's highest court has said otherwise—a fact that Plaintiffs themselves acknowledge in their re-filed complaint. See ECF No. 1-1 at 17 ("[T]he

---

[6] In addition, Plaintiffs' argument for *Burford* abstention has been rejected as inconsistent with that doctrine. Compare Memorandum at 13 (arguing that *Burford* applies because this case "presents difficult questions of applying state law"), with *LeFande v. Moore*, No. 1:10-CV-001 AJT/TRJ, 2010 WL 2163857, at *4 (E.D. Va. May 26, 2010) ("[T]he underlying rationale for *Burford* abstention is not for the federal courts to avoid any complex issues of state law."), *aff'd*, 410 Fed. Appx. 625 (4th Cir. 2011).

Supreme Court of Virginia has . . . concluded that the state provision is coextensive with the rights provided by the Second Amendment."). *Second*, where the state and federal analogues of the same right "are substantively similar," *id.*, it will *never* be the case that a state court's ruling as to the scope of that right might reasonably avoid the need for a federal constitutional ruling, See *Herald Co. v. McNeal*, 553 F.2d 1125, 1130 n.8 (8th Cir. 1977) ("Abstention is not required where the state constitutional provision is the mirror of the federal one."); accord *Educational Servs., Inc. v. Maryland State Bd. for Higher Educ.*, 710 F.2d 170, 174 (4th Cir. 1983) (*Pullman* abstention "improper" where "the only state law questions suggested as unclear . . . are ones either not in issue or in effect duplicative of the constitutional claims").

Where, as here, the "traditional abstention requirements" are not satisfied, "there is little or no discretion" for a court "to abstain" from exercising its jurisdiction. *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007). The Court should thus decline Plaintiffs' invitation to do so.[7]

## III.   The Court should deny Plaintiffs' request for fees and costs

Beyond a remand, Plaintiffs also seek "attorneys' fees, expenses, and costs" under 28 U.S.C. § 1447(c). See Memorandum at 15. That request should be denied for two reasons. *First*, that provision applies only when a federal court issues a remand order—and, for all of the reasons just given, this Court should not remand. *Second*, even if the Court remands, no such award would be warranted here.

_____

[7] As Plaintiffs acknowledge (Memorandum at 14), their argument under 28 U.S.C. § 1367(c) is limited to this Court's exercise of "supplemental jurisdiction over state law claims." That statute, therefore, provides no basis for a court to decline federal-question jurisdiction over a claim that meets the requirements of 28 U.S.C. § 1331. See *In re Mills*, 287 Fed. Appx. 273, 278 (4th Cir. 2008) ("Possessing federal-question jurisdiction, the district court was obliged to exercise it; it had no authority to decline the case simply because it believed that it would be better for the case to proceed in state court."). In any event, Plaintiffs' constitutional claim does not "raise[] a novel or complex issue of State law," 28 U.S.C. § 1367(c), given the Virginia courts' determination that the state-law right to keep and bear arms is coextensive with the Second Amendment. See pp. 5–6, *supra*.

1.      Federal law provides that an order remanding a removed case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances," this language permits a fee award "only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

That rule reflects the purposes Section 1447(c) was intended to serve. "By enacting the removal statute, Congress granted a right to a federal forum to a limited class of state-court defendants." *Martin,* 546 U.S. at 140. "If fee shifting were automatic," the Supreme Court has explained, "defendants might choose to exercise this right only in cases where the right to remove was obvious." *Id.* "But there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.*

2.      Those reasons are directly on point here. Although Defendants' argument in support of removal finds direct support in the Supreme Court's decision in *Merrill Lynch* and the Second Circuit's decision in *Bracey*, Defendants acknowledge that the specific question presented here is rarely litigated and could be considered a matter of first impression before this Court. But that is primarily because it is *highly* unusual for plaintiffs to disclaim an obviously on-point and available federal theory of relief—and thus the ability to seek damages under 42 U.S.C. § 1983 and attorneys' fees under 42 U.S.C. § 1988(b)—and instead attempt to dress their claims "in state raiment" to evade the jurisdiction of a federal court. *Grable*, 546 U.S. at 314. And regardless of whether this Court ultimately concludes that Defendants' theory of removal is right or wrong (Defendants, of course, believe that it is right), that theory easily clears the bar of objective reasonableness. Unlike Plaintiffs' arguments in support of remand, Defendants' arguments supporting removal identify the applicable test for determining whether an ostensibly

state-law claim is removable and seek to demonstrate why each factor is met here. Were Section 1447(a) interpreted to permit an award in these circumstances, it would do the precise thing the Supreme Court sought to avoid in *Martin*: "discourag[e] . . . exercise [of removal] in all but obvious cases." 546 U.S. at 140.

3.      Plaintiffs heatedly insist (Memorandum at 15–16) that they are entitled to fees for three reasons: Defendants' argument in support of removal is "frivolous"; the notice of removal was "dilatory"; and Defendants acted in bad faith to avoid a previously scheduled hearing on Plaintiffs' motion for a temporary injunction. None of those arguments has merit.

a.      As just described, Defendants' argument for federal jurisdiction rests on binding Supreme Court and Fourth Circuit precedent. That Plaintiffs failed to discuss—or even cite—controlling authority in pressing their arguments against removal hardly makes Defendants' theory "frivolous." Even if this Court concludes that argument is ultimately incorrect, it is, at a minimum, objectively reasonable. Indeed, if every argument based on a previously undecided legal theory were frivolous and "border[ing] on sanctionable" (Memorandum at 15), there would be no room at the table for Plaintiffs' entirely novel and untested argument that the constitutional right to keep and bear arms protects the proprietors of indoor shooting ranges and that that qualified right precludes even a temporary closure aimed at slowing the spread of a once-in-a-century pandemic.

b.      Plaintiffs' suggestion that Defendants were "dilatory" (Memorandum at 16) in removing this action within two business days fares no better. Under 28 U.S.C. § 1446(b), the deadline for removal is 30 days after notice of the initial pleading. Defendants acted in less than four days total—one of which was Easter Sunday. That expeditious action is far from "dilatory."

Even if the statute did not provide a standard for timely removal, the speed of Defendants' actions was eminently reasonable under the circumstances. As described previously, counsel received Plaintiffs' re-filed complaint on Thursday, April 9, which fell during the first two days of Passover. That same day, counsel was preparing for and participated in an emergency hearing seeking a temporary injunction by the morning of Sunday, April 11 (Easter Sunday), and counsel anticipated litigating a potential emergency appeal to the Virginia Supreme Court the next day (Good Friday). When the pressing issues of the other emergency matter were resolved, Defendants immediately turned to Plaintiffs' re-filed complaint. After reviewing the complaint and thoroughly vetting the relevant issues, Defendants concluded that removal was warranted and did so as early as possible the next business day—Monday morning, April 13.

c.      Plaintiffs baldly assert that Defendants acted in bad faith to deprive them of their day in court. Defendants have done no such thing and are prepared to litigate Plaintiffs' request for a preliminary injunction on any timetable this Court deems appropriate. Plaintiffs' suggestion (at 16) that Defendants exercised their right to remove this case in an attempt to run out the clock on Plaintiffs' claims is demonstrably wrong. Earlier today, Governor Northam announced that Executive Order 53 will be extended by two weeks.[8]

The fact that Defendants' effort to secure the federal forum they believe is warranted does not comport with Plaintiffs' preferences about when, how, and where this case should be litigated does not mean that Defendants acted in bad faith. See pp. 1–2, *supra* (explaining that Plaintiffs waited more than two weeks after Executive Order 53 was issued before filing their initial suit and voluntarily dismissed the initial action after Defendants removed it, which created

---

[8] See John Engel, "Virginia Gov. Ralph Northam Extends Restrictions on Businesses, Gatherings," WCYB (Apr. 15, 2020), https://wcyb.com/news/local/virginia-gov-ralph-northam-extends-restrictions-on-businesses-gatherings.

further delays). As officers of the Commonwealth, Governor Northam and Colonel Settle are committed to enforcing and defending Executive Order 53, which is designed, quite literally, to save lives. Plaintiffs' unsupported accusation about Defendants' motives is inconsistent with the "presumption of regularity" afforded to the actions of state constitutional officers and should not serve as the basis for a fee award. *Nieves v. Barlett*, 139 S. Ct. 1715, 1723 (2019).

## CONCLUSION

The motion to remand should be denied and the Court should not abstain. In any event, the Court should deny Plaintiffs' request for costs and fees under 28 U.S.C. § 1447(c).


Respectfully submitted,

**HON. RALPH S. NORTHAM and
GARY T. SETTLE**

By:  */s/ Toby J. Heytens*
Toby J. Heytens (VSB No. 90788)
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
THeytens@oag.state.va.us

*Attorney for Defendants*


Dated:  April 15, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2020, a true and accurate copy of the foregoing

Memorandum was filed electronically with the Court's CM/ECF system, which will then send a

notification of such filing to the counsel of record in this case.

By:   */s/ Toby J. Heytens*
Toby J. Heytens (VSB No. 90788)
Solicitor General
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-7240 – Telephone
(804) 371-0200 – Facsimile
THeytens@oag.state.va.us

*Counsel for Defendants*