IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division

|  |  |  |
|---|---|---|
| LYNCHBURG RANGE & TRAINING, LLC, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 6:20-cv-00020-NKM |
| | ) | |
| HON. RALPH S. NORTHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO
<u>REMAND CASE TO STATE COURT</u>**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

I.      Defendants Concede That Plaintiffs Brought No Claims Arising Under
        Federal Law ......................................................................................................2

II.     Where Plaintiffs Expressly Disclaim Bringing a Federal
        Claim, Remand to State Court Is Indisputably the Appropriate Remedy...........................3

III.    The Non-Binding Federal Decisions Submitted As Persuasive Authorities Are In
        No Way "Necessary" to the State Court's Decision ............................................5

IV.     The Commonwealth's Position Turns Federalism on Its Head ........................................10

V.      Plaintiffs' Claim That the Governor Has Violated Va. Code
        44-146.15(3) In No Way Involves a Federal Question.....................................12

VI.     The Commonwealth Has Cited No Authorities Which *Actually* Support Its Arguments..14

VII.    The Commonwealth's Remaining Arguments Are Equally Meritless .............................19

VIII.   Defendants Neither Give Any Reason Why They Are Seeking Removal, nor Cite
        To Even a Single Case Where a State Government Sought To Remove a Case
        From State Court ................................................................................................22

IX.     This Court Should Order the Commonwealth to Pay Plaintiffs' Fees and Costs for Being
        Required to Defend the Commonwealth's Objectively Unreasonable Attempt
        At Removal ......................................................................................................23

CONCLUSION.............................................................................................................24

# TABLE OF AUTHORITIES

Page

**Constitutional Provisions**

U.S. Const. Amendment II ................................................................................... *passim*

Alaska Const. Art. I, § 19 ......................................................................................7

Georgia Const. Art. I, § 1, ¶ VIII .........................................................................7

Hawaii Const. Art. I, § 17 .....................................................................................7

North Carolina Const. Art. I, § 30 ........................................................................7

Rhode Island Const. Art. I, § 22 ...........................................................................7

South Carolina Const. Art. I, § 20 ........................................................................7

Virginia Const. Art. I, § 13 ...................................................................... 6, *passim*


**Statutes**

28 U.S.C. § 1331 ...................................................................................................2

28 U.S.C. § 1442 ...................................................................................................5

Va. Code. § 44-146.15(3) ...............................................................................12, 13


**Cases**

*Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015) .......................................... 23

*Bracey v. Board of Education,* 368 F.3d 108 (2d Cir. 2004) ........................... 18

*Brown v. Vickers Emples. Credit Union*, 162 F. Supp. 2d 528 (S.D. Ms. 2001) ........................... 4

*Bush v. Gore*, 531 U.S. 98 (2000) ..................................................................... 12

*Caldwell v. Am. Home Prods. Corp.,* 210 F. Supp. 2d 809 (S.D. Ms. 2002) ................. 4

*City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283 (1982) ..................... 11

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................... 9

*Dixon v. Coburg Dairy*, 369 F.3d 811 (4th Cir. 2004) ..........................................17, 18

*Dougherty v. A.O. Smith Corp.*, 2014 U.S. Dist. LEXIS 96290 (Dist. DE 2014) ..........................5

*Dusso v. Bd. of Educ. of Montgomery Cnty.*,
     2016 U.S. Dist. LEXIS 41068 (E.D. Ky. 2016)...............................................13

*Federated Dep't Stores v. Moitie*, 452 U.S. 394 (1981)...............................................15

*Fitzgerald v. Racing Ass'n,* 539 U.S. 103 (2003) ........................................................19

*Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983)..............................6, 14

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,
     545 U.S. 308 (2005)...........................................................................1

*Gunn v. Minton*, 568 U.S. 251 (2013)................................................................ 3, *passim*

*In re Deshawn G.*, 40 N.E.3d 762 (IL App. 1st 2015)....................................................7

*Jones v. Wells Fargo Co.,* 671 Fed. Appx. 153 (4th Cir. 2016) ..........................................2

*McBrearty v. Ky. Cmty. & Tech. College Sys.*,
     2006 U.S. Dist. LEXIS 64127 (E.D. Ky. 2006).............................................4, 20

*Merrill Lynch v. Manning*, 136 S.Ct. 1562 (2016) ..................................................15, 22

*Minnesota v. Nat'l Tea Co.*, 309 U.S. 551 (1940) ....................................................10

*Mulcahey v. Columbia Organic Chems., Inc.,* 29 F.3d 148 (4th Cir. 1994)...................................2

*Newport Investments, Inc. v. City of Laguna Beach*, 564 F.2d 893 (9th Cir. 1977).....................10

*Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)................................14

*Pennsylvania v. Muniz,* 496 U.S. 582 (1990) ........................................................19

*Preferred Risk Mut. Ins. Co. v. Ryan*, 589 So. 2d 165 (Alabama 1991).......................................11

*Reetz v. Bozanich*, 397 U.S. 82 (1970), rev'g, 297 F.Supp. 300 (D. Alaska 1969)......................10

*Richmond Newspapers, Inc. v. Com.*, 281 S.E.2d 915, 222 Va. 574 (1981) ...........................9, 10

*Saunders v. Victaulic Co. of Am.,* 1996 U.S. Dist. LEXIS 13751 (E.D. Va. 1996)........................4

*Schultz v. City of Cumberland*, 195 Wis. 2d 554 (Wi. Ct. App. 1995)............................................8

*State v. Daniel*, 291 Kan. 490 (Ks. 2010) ......................................................................................8

*State v. Smoot*, 2018 Tenn. Crim. App. LEXIS 739  (TN Crim. App. 2018)................................7

*State v. Trumbull*, 1998 Ohio App. LEXIS 4268  (OH 10th Dist. Ct. App. 1998).........................7

*Sullivan v. City of Dexter*, 2005 U.S. Dist. LEXIS 3916 (S.D. Ia. 2005)....................................25

*Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055 (6th Cir. 2008) ...........................................4

*Young v. City of Norfolk*, 2001 U.S. Dist. LEXIS 26349 (E.D. Va. 2001)....................................4

**Miscellaneous**

B. Garner, <u>The Law of Judicial Precedent</u> (Thompson West:  2016)...........................................21

A. Scalia and B. Garner, <u>Reading Law</u> (West:  2012)................................................................21

U.S. Attorneys' Manual ................................................................................................................23

C. A. Wright, <u>Law of Federal Courts</u> at 150 (2d ed., 1970) .......................................................23

**INTRODUCTION**

The Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Remand ("Opposition Brief") begins inauspiciously by quoting the Supreme Court's *Grable* case for the proposition that federal questions cannot be kept out of federal court.  Defendants neglected to provide this Court with the critical remainder of the quoted sentence:  "neither have we treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005). The Commonwealth would have this Court believe that the mere mention of the Second Amendment as persuasive authority for a state constitutional claim gives this Court an opening to assert jurisdiction, despite no federal claim existing in the Complaint.

The Opposition Brief then claims that, despite deliberately omitting a Second Amendment claim (which Plaintiffs are absolutely entitled to omit), the case must necessarily involve adjudication of a Second Amendment claim because Article I, Section 13 of the Virginia Constitution has been described by a Virginia court as "coextensive" with the Second Amendment. As explained herein, most of the Virginia Constitution's Bill of Rights has been described as "coextensive" with their federal counterpart, yet no one until this week ever suggested the notion that this fact automatically confers federal question jurisdiction for claims arising under the state constitution. The Opposition Brief's introduction concludes that, despite never raising, and explicitly disclaiming, a claim under the Second Amendment, the Plaintiffs must nonetheless assert a position on whether the challenged Executive Order violates the Second Amendment, thus turning on its head the fundamental notion that a plaintiff is the master of his own complaint.

The Commonwealth's argument is untenable. It fundamentally mislabels the Plaintiffs'

1

mere citation to federal case law as *persuasive* authority on a parallel state constitutional

provision, as a *requirement* that a federal court must *necessarily* construe and interpret the

underlying federal constitutional provision. This pronouncement is plainly incorrect, as

demonstrated by both numerous authorities and common sense.[1]

      The burden of demonstrating that removal from state court is proper is on the party

seeking removal.  *See Mulcahey v. Columbia Organic Chems., Inc.*, 29 F.3d 148, 151 (4th Cir.

1994); Transcript p. 19 l. 9.  The Commonwealth has not even begun to meet that burden.

Because removal jurisdiction raises significant federalism concerns, removal statutes are strictly

construed, and if the propriety of the removal is doubtful, remand to the state court is <u>required</u>.

*Jones v. Wells Fargo Co.*, 671 Fed.Appx. 153, 154 (4th Cir. 2016). In this case, the face of the

complaint contains no federal question or federal interest at all, it affirmatively disavows the

Second Amendment as a basis for its claims, and thus no federal question jurisdiction can exist.

## I.   DEFENDANTS CONCEDE THAT PLAINTIFFS BROUGHT NO CLAIMS ARISING UNDER FEDERAL LAW.

      Defendants' Opposition Brief clearly concedes that Plaintiffs brought no federal claims

whatsoever in their complaint, and therefore removal is not permissible under the theory that a

claim brought was "arising under the Constitution, laws, or treaties of the United States."  28

U.S.C. § 1331.  The Opposition Brief accurately describes Plaintiffs' claims as "seeking relief

under state law," in its heading to its Section I.A.  *See* Opposition Brief at 4.  Defendants begin

---

[1] The Commonwealth's attempt to cast this as a (flawed) logic problem immediately falls flat as well. Quite simply, if X=Y, then resolving whether Z violates Y does not, as the Commonwealth suggests, *require* that one determine whether Z violates X. One could just simply determine directly whether Z violates Y, without involving X at all, particularly when Z and Y exist in the same Cartesian plane of government while X exists on a different, more distant plane. Looking to and understanding X as a conceptual matter may help one in this determination, but Y still stands separate and alone. This is precisely what the state courts in Virginia should do in this case, as they have done in other cases involving parallel rights.

their argument against remand by stating that "federal-question jurisdiction is most often invoked in situations where a plaintiff's cause of action is "created by federal law...." but never argues that this theory applies here.  Defendants only theory to support removal comes from trying to shoehorn this case into an alternative theory — the holding in *Gunn v. Minton*, 568 U.S. 251 (2013).  Defendants' Opposition Brief moves directly into an analysis of the four factors in *Gunn*, without providing this Court with the *Gunn* Court's introductory comments.  Chief Justice Roberts describes this alternative theory for remand as a "**special** and **small** category of cases in which arising under jurisdiction still lies" and as a "**slim** category."  *Gunn* at 258 (emphasis added).  As discussed *infra*, *Gunn* provides no support for the Commonwealth's position here.

## II.   WHERE PLAINTIFFS EXPRESSLY DISCLAIM BRINGING A FEDERAL CLAIM, REMAND TO STATE COURT IS INDISPUTABLY THE APPROPRIATE REMEDY.

Defendants' Opposition Brief acknowledges (at pp. 1-2) the fact that Plaintiffs' complaint expressly disclaimed bringing a federal claim,[2] but then the Commonwealth then slides off into discussing other issues, never to return again to this critical fact.  Nowhere in its Opposition Brief does the Commonwealth ever address any of the case law governing how a federal court should analyze complaints which include such a disclaimer.  The reason that the Commonwealth

---

[2] Plaintiffs' state court complaint expressly disclaimed the bringing of any federal claim — not just once, but twice — and, moreover, expressly disclaims any reliance on any federal authority as binding precedent.  *See* Plaintiffs' Memorandum in Support at 2 n.1 and n.2.  First, Plaintiffs explained that "[f]or avoidance of doubt, Plaintiffs do not rely upon, and seek no determination pursuant to, the Second Amendment, but only pursuant to Article I, § 13 of the Virginia Constitution."  Complaint at 16, n.3.  Second, Plaintiffs made clear that "Plaintiffs do not bring this action under the Second Amendment of the United States Constitution, and their analysis of cases arising under the Second Amendment is presented solely to allow this Court to see how other courts have resolved similar issues. Plaintiffs do not seek any determination by the Court, of any aspect of this case, under the Second Amendment to the U.S. Constitution, but when discussing the right to keep and bear arms, lay a claim only under Article I, § 13 of the Constitution of Virginia."  Complaint at 17.

completely avoids this threshold issue is obvious.  An insurmountable body of case law supports a plaintiff's right to disclaim reliance on federal claims, and to have his state claims heard by a state court.

In a case in the Eastern District of Virginia, *Young v. City of Norfolk*, 2001 U.S. Dist. LEXIS 26349 (E.D. Va. 2001), the court noted that, "[a]s the master of his claim, a Plaintiff under the well-pleaded complaint rule is not prohibited from pleading state law claims" even "using federal statutory language."  The court concluded that "it would be inappropriate for this Court to impose federal claims upon Plaintiff's state court action, when Plaintiff reasonably purports to assert only state law claims."  *Id.* at 23-24.  On appeal, in an unpublished opinion, the Fourth Circuit stated that "we affirm on the reasoning of the district court."  51 Fed. Appx. 466, 467 (4th Cir. 2002).  *See also Saunders v. Victaulic Co. of Am.*, 1996 U.S. Dist. LEXIS 13751, *4 n.1 (E.D. Va. 1996) ("courts in this circuit and elsewhere have consistently held that a plaintiff can successfully disclaim any federal question interest and proceed solely on a state claim...").  A cornucopia of decisions in other courts have reached similar results.[3]

---

[3] *See, e.g., Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1063 (6th Cir. 2008) (plaintiffs "who choose to forego federal claims and secure a state forum … sometimes expressly disclaim any arguable federal cause of action in the text of their complaints....  Including such statements in complaints is an excellent practice that we strongly encourage because it avoids the procedural delay and expense of removal and remand as evidenced by the present case."); *McBrearty v. Ky. Cmty. & Tech. College Sys.*, 2006 U.S. Dist. LEXIS 64127 (E.D. Ky. 2006) ("the plaintiff continued to assert her sole reliance on state law, and expressly disclaimed that she was pursuing any cause of action under federal law.  As the plaintiff correctly states, she is 'the master' of her complaint.  Although the plaintiff could have asserted her freedom of speech and her employment discrimination claims under federal law, she was not prevented from asserting them solely under state law."); *Brown v. Vickers Emples. Credit Union*, 162 F. Supp. 2d 528 (S.D. Ms. 2001) (remand was proper when "[r]emoval was based on an assertion that federal question jurisdiction existed, despite the fact that the Plaintiff only set forth state law causes of action in the Complaint and specifically disclaimed all federal causes of action that might be available to him."); *Caldwell v. Am. Home Prods. Corp.*, 210 F. Supp. 2d 809, 811 (S.D. Ms. 2002) ("By electing to disclaim all federal claims, plaintiffs will be precluded from trying federal claims in the state court ... but that does not prevent plaintiff from being entitled to remand.).

In fact, all decisions that counsel for Plaintiffs have identified have held that remand is the appropriate remedy where a well-pleaded complaint neither asserts nor raises any federal questions — and most especially when a plaintiff expressly disclaims any federal claims.  The only narrow exception to the general rule is the "artful pleading doctrine," under which a court will look behind the face of a complaint to find a federal claim hidden in disguise — but only if resolution of the plaintiff's state law claims "**necessarily**" requires examination or resolution of federal questions.  As discussed *infra*, there is a clear and complete absence of any "necessary" resolution of federal questions in the present case, and certainly not enough of an ambiguity for the Defendants to meet their burden in proving federal question jurisdiction.

## III.   THE NON-BINDING FEDERAL DECISIONS SUBMITTED AS PERSUASIVE AUTHORITIES ARE IN NO WAY "NECESSARY" TO THE STATE COURT'S DECISION.

To establish that it meets the first test set out in *Gunn*, the Commonwealth repeatedly claims that Plaintiffs' "complaint **necessarily** relies on federal law," that "any ruling under state law will **necessarily** depend on judicial interpretations of the Second Amendment," and thus that "this case arises under federal law and may be heard in a federal forum."  Notice of Removal ¶¶ 7,10, page 7.  The Commonwealth makes this claim no fewer than four times in its removal notice, and four more times in its Opposition Brief.  Notice of Removal at 7, 10, 15; Opposition Brief at 3, 5, 6, 10.  At oral argument, the Solicitor General claimed that, "because that federally-protected right would supply a **binding rule** of decision regardless of the existence of state law, any decision on plaintiffs' state right to bear arms claims would **necessarily** entail a decision about the meaning of the federal Constitution."  Transcript, p. 15 l. 24 - p. 16 l. 4 (emphasis

---

*See also Dougherty v. A.O. Smith Corp.*, 2014 U.S. Dist. LEXIS 96290, *47-49 (Dist. DE 2014) for yet another string cite as to why a plaintiff can expressly disclaim claims in order to avoid 28 U.S.C. §1442 federal officer removal.

added).  Amazingly, the Commonwealth claims that this federal control over what a state

constitution means is mandated "under the Supremacy Clause."[4]  Notice of Removal at 5.

The Commonwealth is certainly correct that the word "necessarily" is the key word in the

application of the *Gunn* test, in that claims are removable only "where the vindication of a right

under state law **necessarily** turned on some construction of federal law."  *Franchise Tax Bd. v.

Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983) (emphasis added).  However, the

Commonwealth apparently misunderstands what the word "necessarily" means.  Its established

definition is "of necessity; unavoidably."[5]  In other words, the Commonwealth's remarkable

position is that it is judicially impossible for a Virginia court to reach a conclusion about the

meaning of Article I, Section 13 of the state's own constitution, without interpreting the Second

Amendment as well.  The Commonwealth apparently takes the position that Article I, Section 13

is a nullity — it no longer exists as a free-standing state constitutional protection of the people of

Virginia — but has somehow had its independent existence eradicated by, or subsumed into, the

federal constitution's Second Amendment.

At other occasions, the Commonwealth claims that the first element of the *Gunn* test

("necessarily raised") is met because "any conclusion about whether a challenged restriction fails

or satisfies Article I, § 13 will *necessarily* reflect a judgment about whether that same restriction

fails or satisfies the Second Amendment."  Opposition Brief at 6.  "Necessarily raised" and

---

[4] The Commonwealth curiously also argues that any decision on the meaning of Article I, Section 13 of the Virginia Constitution "will ... necessarily impact Second-Amendment jurisprudence that has yet to be written."  Notice of Removal at 5.  At oral argument, the Commonwealth went further, arguing that "if a state court concludes [something about] ... Article I, Section 13 ... that is a **binding** holding about the meaning of the Second Amendment." (Emphasis added.)  Such argument defies credulity.

[5] *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/necessarily

"necessarily reflect a judgment about" are not the same thing.  Certainly, one could plausibly speculate that, if a Virginia court reaches a result based on Article I, Section 13, it might reach a similar result based on a Second Amendment claim.  But that does not mean the Second Amendment claim is "necessarily raised."  If it were, then no plaintiff could ever bring an Article I, Section 13 challenge without being subject to removal to federal court in every case — at the whim of the Commonwealth.  Indeed, the Commonwealth posits as much, claiming that "Although Article I, Section 13 ... does not directly reference the Second Amendment, [it] contains the same operative language,"[6] and thus can only be interpreted by a federal court. Opposition Brief at 8.

That cannot possibly be the law.  The implications of such a result would be wide and far ranging, and would do violence to basic principles of federalism.  The constitutions of at least seven states protect the right to keep and bear arms with language that is identical to that of the Second Amendment, while numerous other states contain similar language or fragments thereof. *See, e.g.,* Constitutions of Alaska (Art. I, § 19), Georgia (Art. I, § 1, ¶ VIII), Hawaii (Art. I, § 17), North Carolina (Art. I, § 30), Rhode Island (Art. I, § 22), South Carolina (Art. I, § 20), Virginia (Art. I, § 13).  Moreover, numerous courts around the country have interpreted numerous state constitutional provisions as being co-extensive with similar protections in the U.S. Constitution.  *See, e.g., In re Deshawn G*., 40 N.E.3d 762, 779 (IL App. 1st 2015) ("the Illinois proportionate penalties clause is co-extensive with the eighth amendment's cruel and unusual punishment clause."; *State v. Smoot*, 2018 Tenn. Crim. App. LEXIS 739, *64, (TN Crim. App. 2018) ("Rights under the Confrontation Clause of the United States Constitution and the protections afforded by the Tennessee Constitution are co-extensive."); *State v. Trumbull*,

---

[6] Article I, Section 13 and the Second Amendment are most definitely not identical.

1998 Ohio App. LEXIS 4268, *6 (OH 10th Dist. Ct. App. 1998) ("Section 14, Article I of the Ohio Constitution is co-extensive with the Fourth Amendment."); *Schultz v. City of Cumberland*, 195 Wis. 2d 554, 570 (Wi. Ct. App. 1995) ("The Wisconsin Supreme Court has traditionally interpreted the free speech protections under our constitution to be co-extensive with those declared by the United States Supreme Court interpreting the federal constitution."); *State v. Daniel*, 291 Kan. 490, 491 (Ks. 2010) ("We interpret § 15 of the Kansas Constitution Bill of Rights to provide the same protection from unlawful government searches and seizures as the Fourth Amendment to the federal Constitution.").  There are many more cases like this.

Just because a state constitutional right is deemed "co-extensive" with a federal constitutional right does not automatically create federal question jurisdiction and make a challenge based on a state constitutional provision removable to federal court.  If co-extensiveness on some issue is the only requirement to remove a state action to federal court, then the Commonwealth could remove any Virginia state court case seeking an injunction - due to the fact that Virginia courts use the federal four-part test as a framework in analyzing state statutory injunctive relief as well.  *See* Complaint at ¶¶ 31-32.

Moreover, as Plaintiff's counsel noted at oral argument, the idea that Virginia courts interpreting Article I Section 13 are bound by federal courts' interpretation of the Second Amendment is belied by the fact that "[t]he courts of Virginia ... already have adjudicated Article I, Section 13 without applying federal law or federal case law on the Second Amendment [including] expressly declin[ing] to adopt a federal balancing test that other federal courts, including the Fourth Circuit, have used in Second Amendment cases."  Transcript p. 18 l.17 - p. 19 l.1.  During the pre-*Heller* years in which federal courts were interpreting the Second Amendment to protect only a collective state right to maintain a fighting force, Virginia courts

8

(and the Virginia legislature) expressly rejected that understanding, and uniformly held that **identical language** in Article I, Section 13 protected an individual right to keep and bear arms, rather than a "collective" right.  As it turns out, the Supreme Court made clear in *District of Columbia v. Heller*, 554 U.S. 570 (2008) that the Virginia courts got it right, while almost all of the federal courts got it wrong.  This conclusively demonstrates that Virginia state courts have interpreted — and remain perfectly free to interpret — Article I, Section 13 in a way that rejects interpretations of the Second Amendment by federal courts.

More broadly, the Commonwealth's contention that a state court in Virginia would "necessarily" have to decide this case on Second Amendment grounds is directly belied by the Supreme Court of Virginia's own approach to cases implicating parallel state and federal constitutional rights. Indeed, even in cases where plaintiffs expressly bring claims under both federal and state constitutions, the Supreme Court of Virginia has clearly stated a strong preference to decide constitutional questions *solely* on the basis of the state constitution,. In *Richmond Newspapers, Inc. v. Com*., 281 S.E.2d 915, 222 Va. 574 (1981) ("*Richmond Newspapers II*"), in holding that the press had a right to report on criminal pretrial proceedings, the Supreme Court of Virginia stated:

> This holding we feel is mandated both by Article I, Section 12 of the Virginia Constitution and by the United States Constitution, as construed in Richmond Newspapers. **However, we rest our decision on Article I, Section 12**, for, as the Commission on Constitutional Revision stated:
>
> (t)hat **most** of the provisions of the Virginia Bill of Rights have their **parallel** in the Federal Bill of Rights is ... no good reason not to **look first to Virginia's Constitution** for the safeguards of the fundamental rights of Virginians. The Commission believes that the Virginia Bill of Rights should be a living and operating instrument of government and should, by stating the basic safeguards of the people's liberties, minimize the occasion for Virginians to resort to the Federal Constitution and the federal courts. (citing Report of the Commission on Constitutional Revision, p. 86 (1969).

9

*Id.* at 922-23 (emphasis added).

It is significant that, in *Richmond Newspapers II*, the Supreme Court of Virginia was presented with the opportunity to rule on the parallel First Amendment issues, and indeed it discussed and cited numerous federal cases in its opinion, yet went out of its way to rely solely on the state constitution in its holding. This is precisely what the Plaintiffs in the present case would expect from a Virginia state court.

The principle of allowing state courts the ability to interpret their own parallel constitutional provisions, *even when* express federal claims are brought alongside state claims, is fundamental and not unique to Virginia.  For example, "[w]e note, additionally, that since some of the appellant's claims were predicated on some of the California Constitution's 'mirror image' provisions of the Federal Constitution, it was particularly appropriate that the California courts be afforded the initial opportunity of interpreting the constitution of their own state in relation to the appellant's complaint." *Newport Investments, Inc. v. City of Laguna Beach*, 564 F.2d 893 (9th Cir. 1977) (citing *Reetz v. Bozanich*, 397 U.S. 82 (1970)), rev'g, 297 F.Supp. 300 (D. Alaska 1969).

## IV.    THE COMMONWEALTH'S POSITION TURNS FEDERALISM ON ITS HEAD.

In order to remove this case to federal court, the Commonwealth would have this Court engage in a sweeping rewrite of a number of the most fundamental principles American constitutional law.

For example, it is axiomatic that it is up to a state's courts to interpret that state's constitution.  The Supreme Court has noted that "[i]t is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions." *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940).  As Arizona Supreme Court Justice Clint Bolick noted in a 2016 speech,

"even when such [state constitutional] provisions are identical to those in the U.S. Constitution, state courts are free to interpret them differently than the federal courts do."[7]  Indeed, while the U.S. Constitution sets a baseline of rights below which state courts and state constitutions may not go, "a state court is entirely free to read its own State's constitution more broadly than this Court reads the Federal Constitution."  *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 293 (1982).[8]

The Commonwealth would turn both of those bedrock principles on their heads. According to the Commonwealth, only this Court can divine the meaning of Article I, Section 13, allegedly because interpretation of the state provision "necessarily" must turn on the meaning of the Second Amendment (as interpreted by federal judges).  The assertion that it is "necessary" for the Virginia court to rely on federal case law in deciding the meaning of Article I, Section 13 effectively means that Virginia courts would never again have the authority to interpret the Virginia Constitution.  That would lead down a road that no court should go — giving federal courts control the interpretation of countless state constitutional provisions which have been interpreted as "co-extensive with" or in "parallel" to the U.S. Constitution.  The Commonwealth's argument would make for a one-way gate where, once a state court chooses to interpret a state constitutional provision similarly to the federal constitution, the state's courts lose control over their own constitution, and federal courts are handed the authority for its

---

[7] *See* https://www.cato.org/policy-report/novemberdecember-2016/state-constitutions-freedoms-frontier.

[8] The Commonwealth claims that "Second Amendment rules [] are binding on state ... courts."  Memorandum at 1.  First of all, this is a non-sequitur, because this is not a Second Amendment case.  But secondly, it is black letter law that state courts are actually **not bound** by any federal court decisions except for the Supreme Court.  *See e.g., Preferred Risk Mut. Ins. Co. v. Ryan*, 589 So. 2d 165, 167 n.2 (Alabama 1991) ("Decisions of federal courts other than the United States Supreme Court, though persuasive, are not binding authority on this Court.").

interpretation.  As Plaintiffs noted, under the Commonwealth's theory, no Plaintiff could ever bring a cause of action in state court under Article I, Section 13, or indeed under "most" of the Virginia Constitution, which often parallels the federal one, because it would immediately become a federal constitutional claim subject to federal jurisdiction and removal by the Commonwealth.

It is also axiomatic that, when there is a conflict in interpretation of state law between a federal court and a state court, the state court's interpretation will govern.  *See, e.g., Bush v. Gore*, 531 U.S. 98, 112 (2000), Rehnquist, C.J., Scalia, J., and Thomas, J., concurring and describing a general principle on which **all** members of the Court (including the dissent) agreed ("In most cases, comity and respect for federalism compel us to defer to the decisions of state courts on issues of state law. That practice reflects our understanding that the decisions of state courts are definitive pronouncements of the will of the States as sovereigns.").

The Commonwealth's curious position completely rejects the states as independent sovereigns in our federal system, with state constitutions representing sources of law and authority separate and apart from the federal constitution.  According to the Commonwealth, not only are Virginia courts **not** the final arbiters of the meaning of Article I, Section 13 of the Virginia Constitution, but in fact they should have no role to play at all.  In other words, according to the Commonwealth, Article I, Section 13 has no independent meaning, cannot be interpreted by state courts, and thus ceases to exist, being in effect subsumed into the Second Amendment.

## V.   PLAINTIFFS' CLAIM THAT THE GOVERNOR HAS VIOLATED VA. CODE. 44-146.15(3) IN NO WAY INVOLVES A FEDERAL QUESTION.

The Commonwealth argues that Plaintiffs have presented a federal question by alleging a violation of Va. Code. § 44-146.15(3), a state statute that provides it can be violated by an

infringement **either** of "Article I, Section 13 of the Constitution of Virginia **or** the Second Amendment of the Constitution of the United States."  Emphasis added.  The Commonwealth italicizes "*or the Second Amendment*," as if that phrase were the only violation Plaintiffs had alleged.  Opposition Brief at 2; Notice of Removal at 2.  The mere fact that the Virginia statute prohibits two different violations — one federal and one state — provides no basis for federal jurisdiction, when Plaintiffs alleged only a state violation, and no claim was made based on the federal prohibition in the statute.  *Id.* at 4.

Federal courts have held that the fact that a state statute refers to a federal law does not create federal question jurisdiction when a plaintiff brings a state claim, as discussed at length in *Dusso v. Bd. of Educ. of Montgomery Cnty.*, 2016 U.S. Dist. LEXIS 41068 (E.D. Ky. 2016). The court in *Dusso* explained that the Kentucky Civil Rights Act's reference to federal Title VII did not a federal question make. The court in *Dusso* stated "[c]ontrary to Defendant's representations, this Court is unconvinced that Plaintiff specifically pled a cause of action under Title VII [merely by relying on the KCRA which refers to Title VII." (DE 6 at 2.) The face of the Complaint is, at best, ambiguous on that point. Given the parties' relative burdens, such ambiguity is sufficient to justify remand."  *Id.*  The plaintiff in *Dusso* brought claims solely under the state statute, and the court found that reference in the complaint to federal Title VII authorities did not give rise to a federal question, explaining that these cases were "mentioned [in the complaint] to explain the gloss that Kentucky courts have imported from federal anti-retaliation precedent into state precedent. *Id*. This is precisely the situation in the present case with respect to Va. Code § 44-146.15(3) at issue here, which mentions the Second Amendment but does not *require* that a litigant rely upon the Second Amendment.

But even if Plaintiff's claim under Va. Code. § 44-146.15(3) somehow involved a federal

question, which it clearly does not, this Court is *still* prohibited from exercising jurisdiction. That is because the remedy for a violation of Va. Code. § 44-146.15(3) is to declare the Governor's order to be in violation of the statute, and to order the Governor to cease the violation. Yet as the U.S. Supreme Court has made abundantly clear, federal courts **absolutely cannot** order state officials to conform their conduct to the requirements of state law. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment."). If this Court cannot grant the relief Plaintiffs' seek, it certainly does not have jurisdiction to hear this case.

## VI.   THE COMMONWEALTH HAS CITED NO AUTHORITIES WHICH *ACTUALLY* SUPPORT ITS ARGUMENTS.

Defendants cited two cases in their Notice of Removal that they apparently have now abandoned. *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) involved a situation where a "federal cause of action completely pre-empts [the] state cause of action [and thus] **any complaint** that comes within the scope of the federal cause of action necessarily 'arises under' federal law." *Id.* at 24. First, the Second Amendment does not in any way "completely pre-empt" Article I, Section 13. Second, if it did, that would mean that "any complaint" brought alleging a violation of Article I, Section 13 - or, as discussed *supra,* nearly any claim under the Virginia Bill of Rights - would be removable to federal court. That is simply untenable. As Plaintiffs noted, that is not a power or jurisdiction that the federal courts have, nor is it a responsibility that the federal courts want. *Franchise Tax Board* cuts in favor of

14

Plaintiffs.

The second case the Commonwealth cited in its Notice of Removal, *Federated Dep't Stores v. Moitie*, 452 U.S. 394 (1981), cuts the Commonwealth's case to the bone. There, the Supreme Court made it abundantly clear that "state courts remain the preferred forum for interpretation and enforcement of state law, [and] plaintiffs must be permitted to proceed in state court under state law. It would do violence to state autonomy were defendants able to remove state claims to federal court merely because the plaintiff could have asserted a federal claim based on the same set of facts underlying his state claim." *Id.* at 407.

In the Commonwealth's oral argument to this Court and in the Opposition Brief, the Solicitor General curiously faults Plaintiffs for not discussing three cases not raised in the Commonwealth's Notice of Removal, twice faulting Plaintiffs for failing to discuss these cases. Transcript p. 12 ll. 22-25, p. 19 ll. 21-23. Neither decision is relevant to this case. But because the Commonwealth now raises and misapplies them, Plaintiffs will address them below.

First, the Solicitor General noted that, in *Merrill Lynch v. Manning*, 136 S.Ct. 1562 (2016), the Court explained that there were certain "rare occasions" where "a suit raising a state-law claim **rises or falls on** the plaintiff's ability to prove the violation of a federal duty." *Id.* at 1569 (emphasis added); Transcript p. 15 ll. 3-6. *See* Opposition Brief at 8, *passim.* That case involved plaintiffs who brought only state law claims in a securities case, and the Court determined that, despite reference to violations of federal regulations in the complaint as persuasive/explanatory, federal jurisdiction did **not** exist, reminding of the Court's long-standing "practice of reading jurisdictional laws, so long as consistent with their language, to respect the traditional role of state courts in our federal system and to establish clear and administrable rules." *Id.* at 1567-68. The Court stated that it took no issue "when state courts, in deciding

15

state-law claims, address possible issues of the [federal law]… And it is less troubling for a state court to consider such an issue than to lose all ability to adjudicate a suit raising only state-law causes of action." *Id.* at 1574.

The Opposition Brief (at 8, *passim*) next cites *Grable*, which Plaintiffs have addressed in their Introduction, *supra*. There, the Supreme Court found federal subject matter jurisdiction because there was a disputed and directly operative question of federal law – an IRS notice provision affecting the financial rights of both private parties and the substantial interests of the IRS and its lien priority. In this present case, there is no federal agency involved or other federal government interest involved in adjudicating the case, nor does any portion of the present case require resolution of a disputed federal law.  No federal interest could possibly be implicated by a state court interpreting its own constitution and statutes, and thus *Grable* is simply inapposite.

The Opposition Brief next cites *Gunn* and attempts to shoehorn Plaintiffs' deliberately pleaded state law action into the narrow, multi-factor test set forth therein. Stated in the conjunctive, a case must satisfy all four prongs of the *Gunn* test in order for a federal court to assert jurisdiction over a state law claim. Plaintiffs' complaint satisfies none of them. As discussed already at length, no Second Amendment issue is "necessarily raised," because the case relies on a freestanding state constitutional provision that Virginia courts have described as "co-extensive" with the Second Amendment, but analyzed in a manner that has rejected in some instances Second Amendment tests set forth by federal courts. Indeed, if the two rights are "co-extensive," analysis of the Second Amendment would be not only unnecessary, it would be superfluous and duplicative.

The next *Gunn* factor, whether a federal issue is "actually disputed," cannot possibly be found in this case. The complaint alleges no violation of any federal law and raises no federal

16

issue to be disputed. The complaint alleges that closure of the indoor ranges violates the state constitution and exceeds the Governor's authority under state law, and thus the dispute rests wholly on these purely state issues.

Similarly, on the third prong, there is no "substantial" issue because there is no federal issue at all, and as already addressed, the Virginia courts can and would resolve this case without deciding or ruling upon the federal constitutional provision, no matter how similar it may be.

Neither is the fourth *Gunn* factor met. Few better examples exist of a case that, on principles of comity, should be adjudicated by a state court, so as to not upset the balance between the federal and state courts. This case is one involving a state governor's exercise of extraordinary authority under state law, pitting his assertions of power against the limitations of the state's statutes and state constitution. Comity necessarily requires that the Virginia courts be able to interpret the Virginia Constitution.

The Commonwealth also relies on *Dixon v. Coburg Dairy*, 369 F.3d 811 (4th Cir. 2004) as supporting its position. Opposition Brief at 9, 10, 14. Not only does *Dixon* cut against the Commonwealth, it all but obliterates the Commonwealth's argument. In *Dixon*, an auto mechanic was fired after refusing to remove a Confederate flag from his tool box. He sued in South Carolina state court, alleging wrongful termination under state law, based on a statute that prohibited firing based on rights guaranteed in either the federal or state constitutions. *Id.* at 815. The district court permitted removal to federal court based on the theory that the case involved a "substantial question of federal law" — whether Dixon's First Amendment rights had been violated.

Sitting *en banc*, the Fourth Circuit flatly rejected removal. The court held that removal is proper only when "*every* legal theory supporting the [state] claim requires the resolution of a

federal issue. ... if the plaintiff can support his claim with even one theory that does not call for

an interpretation of federal law, his claim does not 'arise under' federal law...." *Id.* at 817.  In

fact, the *en banc* court went even further, and noted that "Even if Dixon's claim had relied

exclusively on the First Amendment to establish a [state] violation, the question of federal law

raised by his complaint is not substantial." *Id.* at 819.

Application of *Dixon* to this case is thus simple.  Plaintiffs have multiple state law

theories as to why the Governor's order violates Article I, Section 13.  For example, Plaintiffs'

complaint cites existing Virginia case law interpreting and applying Article I, Section 13.

Plaintiffs could also rely on authorities from the Virginia legislature, legislative history, etc., in

the 1971 ratification of Article I, Section 13 in its current form.  Finally, Plaintiffs could rely on

the plain text of Article I, Section 13.  None of those arguments involves reference to any

nonbinding, persuasive federal authorities, nor do they involve interpretation of any federal

question or resolution of any federal question.  Rather than supporting it, *Dixon* undermines the

Commonwealth's argument.

The Commonwealth then cites *Bracey* regarding whether co-extensive state constitutional

rights confers federal jurisdiction.  Opposition Brief at 9.  However, far from ruling that the

Connecticut Constitution's provision was co-extensive with the First Amendment, *Bracey* held

that the state statute under which the lawsuit was brought was for a remedy of **either** the First

Amendment **or** the state constitutional right.  *Bracey* held that the federal court could determine

whether the actions violated the First Amendment, not as co-extensive with the state constitution,

but because it was expressly referenced in the state cause of action statute.  *See Bracey* at 116.

The Commonwealth's conflation of the statutory remedy in that case should be disregarded, as

Plaintiffs in the present case have expressly **not** sought relief under the Virginia statute based on

the Second Amendment. *Bracey* also appears to be at odds with the Fourth Circuit *Dixon* case cited by the Commonwealth, reaching the opposite conclusion on the same basic issue.

The Opposition Brief also cites two Supreme Court decisions which it considers "highly instructive," but which are actually inapposite.  Opposition Brief at 7.  In both *Pennsylvania v. Muniz* and *Fitzgerald v. Racing Ass'n of Central Ia.*, the Supreme Court considered whether it had independent federal grounds to review the decisions of **state courts**.  The Court in these cases *was not addressing at all* whether a *lower* federal court would have original jurisdiction to hear those cases, and for the Commonwealth in this case to treat them as "highly instructive" here bends credulity.  It is axiomatic that the Supreme Court has authority to review the decisions of the highest courts of the states if those decisions raise significant federal questions.  But that does not mean the lower federal courts have that same authority.  *See* Supreme Court Rule 14.1(g)(i).  Indeed, as noted *supra*, their decisions are non-binding on state courts.

## VII.    THE COMMONWEALTH'S REMAINING ARGUMENTS ARE EQUALLY MERITLESS.

The Opposition Brief continues to tout the fact that "Plaintiffs' re-filed complaint is nearly identical to their first."  Notice of Removal at 2.  *See also* Notice of Removal ¶ 3 ("nearly verbatim copy"), ¶ 5 ("handful of edits" and "minimal redactions"); Transcript p. 13 l. 24 ("virtually identical"), p. 14 l. 5 ("nearly identical"), ll. 8-9 ("virtually identical right down to the page and paragraph numbers"), and l. 21 ("handful of edits"); Memorandum at 2 ("nearly verbatim").

The Commonwealth focuses on the *quantity* of changes versus the *substance* of the differences between Plaintiffs' complaints.  As Plaintiffs noted, the task required only minor editing to Plaintiffs' first complaint to remove the Second Amendment claim in the second

complaint. The ease with which Plaintiffs, as the masters of their own complaint, were able to remove their federal claim, if anything underscores how unnecessary the Second Amendment claim is to adjudication of this case.

Of course, just because federal and state constitutional rights are similar, and the arguments that each has been violated look similar, that does not mean that a plaintiff who raises one claim necessarily raises the other. *See McBrearty v. Ky. Cmty. & Tech. College Sys.*, 2006 U.S. Dist. LEXIS 64127 (E.D. Ky. 2006) ("[a]lthough the plaintiff could have asserted her freedom of speech ... claim[] under federal law, she was not prevented from asserting [it] solely under state law."). Likewise, Plaintiffs are not prevented from vindicating their right to keep and bear arms solely under state law.

Second, the Commonwealth several times has claimed that, in order to avoid a Second Amendment claim being forcibly imposed on them, Plaintiffs must "concede that the challenged executive order complies with the Second Amendment and federal law." *See* Opposition Brief at 1 ("to stay out of federal court, Plaintiffs may stipulate that the challenged Executive Order complies with federal law...."). *See also* Notice of Removal at 3 and 7 (Second Amendment case law governs their state claims "[u]nless Plaintiffs are willing to concede that the challenged executive order complies with the federal constitutional rules...."); Transcript p. 20 ll. 12-13, 20-24 ("Mr. Browne's pleadings make clear that he thinks that the Second Amendment has been violated," and "unless they're prepared to concede that this doesn't violate the Second Amendment, a determination by a court that this law violates Article I, Section 3, is … also a determination by that court that it also violates the Second Amendment....").

Plaintiffs are certainly not required to "concede" that no violation of the Second Amendment has occurred. The Commonwealth cites to no authority for this contrived claim,

because none exists.  The Plaintiffs, as the masters of their own complaint, need not take a

position on a claim that they chose to not raise in the first place.  As dozens upon dozens of cases

make clear, there is no legal basis for the Commonwealth's attempt to require Plaintiffs to allege

federal claims in addition to state claims.  Nor does any legal principle require Plaintiffs to go on

the record to affirmatively dispute, concede, or otherwise take a position on the Second

Amendment in federal court before being permitted to proceed on their state claims in state

court.

   Third, the Commonwealth continues to argue that Plaintiffs' state law case **must** really be

a Second Amendment case in hiding, because Plaintiffs' "complaint relies almost *exclusively* on

federal court decisions construing the Second Amendment."  Notice of Removal at 2; *see also* ¶

6; Transcript p. 14 ll. 16-17; Opposition Brief at 2, 3, 6, 7.  But, as the Commonwealth admits,

there is "'very little case law in the Virginia courts'" interpreting Article I, Section 13.  Notice of

Removal at 4.  In the absence of case law interpreting a specific legal provision, where else

should a lawyer look but to how similar language has been interpreted by other courts?  In fact,

that is a *fundamental rule of statutory construction*, known as the "prior construction canon."

*See* A. Scalia and B. Garner, <u>Reading Law</u> (West 2012) at 322-25 ("when a statute uses the very

same terminology as an earlier statute — especially in the very same field — it is reasonable to

believe that the terminology bears a consistent meaning.  One might even say that the body of

law of which the statute forms a part ... is part of the statute's context."); *see also* B. Garner, <u>The

Law of Judicial Precedent</u> (Thompson West 2016) at 165 ("Lower state courts also look to the

decisions of the other states' high courts when examining similar statutes.").  Following the basic

rules of statutory interpretation when interpreting a state constitutional provision does not create

a federal question.

Fourth, in what could perhaps be termed the Commonwealth's *coup de grâce*, the Solicitor General has quite astutely noted that some of the Plaintiffs in this case "are not the Virginia Chamber of Commerce or the Virginia Small Business Association." Transcript p. 16 ll.11-14. Indeed, they are not. The Solicitor General asserts that plaintiffs "are right to keep and bear arms plaintiffs at their bottom, and that means the Court has either original or supplemental jurisdiction over all of them." Transcript p. 16 ll. 16-19 (emphasis added). It is apparently the Commonwealth's contention that this Court has jurisdiction over this case not only because of its subject matter, but also separately because of **who the plaintiffs happen to be**. In other words, the Solicitor General would have this Court conclude that these are "**federal plaintiffs**" — plaintiffs who can only sue in federal court. The Solicitor General unfortunately did not provide any statutory reference in United States Code for this "federal plaintiff" jurisdiction, and despite diligent search, Plaintiffs' counsel have been unable to find such a provision in the Code.

## VIII.   DEFENDANTS NEITHER GIVE ANY REASON WHY THEY ARE SEEKING REMOVAL, NOR CITE TO EVEN A SINGLE CASE WHERE A STATE GOVERNMENT SOUGHT TO REMOVE A CASE FROM STATE COURT.

The Commonwealth's Opposition Brief observes that litigation such as that brought by Plaintiffs here rarely occurs "because it is *highly* unusual for plaintiffs to disclaim an obviously on-point and available federal theory of relief," primarily because plaintiffs could seek attorneys fees in federal court. *See* Opposition Brief at 18. This is a curious assertion given that this is exactly what occurred in the *Merrill Lynch* case touted by the Commonwealth as one of its central authorities. Regardless, Plaintiffs have brought a case against a state purely based on state law.

Moreover, defendants never address the unusual nature of cases involving removal sought by a state government, as the Commonwealth is doing in this case. Such cases, too, must

be rare indeed, and Defendants fail to cite to even one such case in its Opposition.[9]  Not

surprisingly, the Commonwealth never once discusses **why** it, unlike its sister states, fights so

hard to ensure that Plaintiffs' case, based exclusively on state claims, is removed, and never

explains why this case could not be more appropriately handled by a state court.

As Professor Charles Alan Wright explained, removal "is quite an anomalous

jurisdiction, giving a defendant, sued in a court of competent jurisdiction, the right to elect a

forum of his own choosing.  Such a procedure was unknown to the common law, nor is removal

mentioned in the Constitution."  C.A. Wright, Law of Federal Courts at 150 (2d ed., 1970).   It is

even more anomalous that a state Governor and a state Solicitor General would be so distrustful

of their own state courts to reach a fair result on a matter of state law, that they would fight tooth

and nail to get that case to federal court.

When a federal officer is sued in state court, the U.S. Attorneys' Manual advises that

"[i]n determining whether or not to remove such cases or to recommend the removal of other

cases, the USA should consider [first] [t]he likelihood of a fair disposition in the state or local

court."  *See* U.S. Attorneys' Manual.  If the Solicitor General made a similar analysis, apparently

it is his curious and unfounded view that the Commonwealth will not obtain "a fair disposition"

in its own state courts.

**IX.    THIS COURT SHOULD ORDER THE COMMONWEALTH TO PAY
PLAINTIFFS' FEES AND COSTS FOR BEING REQUIRED TO DEFEND THE
COMMONWEALTH'S OBJECTIVELY UNREASONABLE ATTEMPT AT
REMOVAL.**

The Solicitor General argued to this Court that "the only emergency here is the plaintiffs'

own making...."  Record at 11 ll. 24-25, also at 13, ll. 6-8.  Yet it was the Governor who issued

---

[9] Counsel of Plaintiffs have identified only one based on limited research, and even that one was
a case brought under a federal remedy.  *Beaulieu v. Vermont*, 807 F.3d 478 (2d Cir. 2015).

EO 53 and closed down Plaintiffs' ranges.  And it was the Solicitor General who has improperly attempted to remove Plaintiff's state law case into federal court on the eve of a state court injunction hearing, in order to stall the relief sought by Plaintiffs.  The fact that Plaintiffs are the ones seeking sought emergency relief from this Court does not mean they caused the emergency.

The Commonwealth's claims that this Court has jurisdiction over Plaintiffs' complaint are frivolous, and vexatious in that they seek to delay resolution of Plaintiffs' state court case.  In short, the Commonwealth's attempt to remove this case to federal court borders on sanctionable conduct.  At a minimum, this Court should order the Commonwealth to pay Plaintiffs' attorneys' fees and costs, for being inappropriately forced to litigate this matter in this Court.  In addition to the irreparable delay of lost time to Plaintiffs who continue to be harmed by the Governor's order, the Commonwealth has improperly placed on Plaintiffs the burden of preparing now two briefs on complex issues of federal and state law, and participate in oral argument to this Court on the same.  Indeed, at oral argument to this Court, it was the Solicitor General who specifically asked this Court for another round of briefing on these issues (Transcript at 12, ll.1-2), no doubt to further delay Plaintiffs' state court proceedings.

## CONCLUSION

The Opposition Brief is entirely devoid of any authority which advances the Commonwealth's theory that this Court has federal question jurisdiction.  Each case the Commonwealth cites is, at best, inapposite, while most of them actually support Plaintiffs' case.  Plus, scores of other cases make it clear that removal is inappropriate in this case, and that remand is required.

It is no surprise that the Commonwealth cannot meet its burden to prove federal jurisdiction.  No court has ever adopted even one of the extreme positions that the

Commonwealth advances.  As noted above, allowing removal in this case would turn federalism

on its head and destroy the careful balance between state and federal courts.  The

Commonwealth would have this Court reject (and indeed reverse) numerous well-settled,

fundamental principles of American law, including (i) that state courts must be left free to

interpret their own constitutions, (ii) that state courts are the ultimate arbiters of state law, (iii)

that state courts can interpret their constitutions independently, differently, and more broadly

than the federal constitution, (iv) that decisions by the lower federal courts are not binding on

state courts, and (v) that state court decisions are not binding on federal courts.  The

Commonwealth also ignores the fundamental rules of statutory construction, and the indisputably

appropriate role that nonbinding but persuasive precedent plays in the American legal system

and specifically in Virginia state courts.  As Plaintiffs' counsel noted at oral argument, "the use

of federal law as persuasive authority in advancing [a] state law theory ... does not ... somehow

create[] federal jurisdiction." *Sullivan v. City of Dexter*, 2005 U.S. Dist. LEXIS 3916, *10-11

(S.D. Ia. 2005).

Other of the Commonwealth's contentions are equally spurious.  The Commonwealth

claims that Plaintiffs must affirmatively disclaim the Second Amendment — and, in fact, that

Plaintiffs must concede that the Governor's order complies with the Second Amendment — in

order to be allowed back into state court.  The Commonwealth would have this Court make the

Solicitor General the master of Plaintiffs' complaint, choosing which claims they must bring, and

in which court, in order to vindicate their right to keep and bear arms.  There is no legal authority

for this proposition.

The Commonwealth claims that Plaintiff's Article I, Section 13 claim "necessarily" relies

on federal law, ignoring the fact that Plaintiffs can prove (and a Virginia court can find) a state

violation based entirely on state law and precedents, without any determination with respect to the Second Amendment.  Indeed, Virginia courts have already done so several times, refusing to follow the holdings of and legal tests applied by the federal courts in Second Amendment cases, and expressly limiting their holdings to only the state constitution in other matters involving parallel state and federal rights.

At bottom, the Commonwealth seeks a finding from this Court that there no longer is any such thing a freestanding claim under a state's bill of rights if it is parallel to the federal provision, and that all such state claims automatically transform into federal claims to be argued exclusively in federal court.  This means that the Virginia courts no longer have any say over the meaning of Article I, Section 13 or indeed over any of their mostly co-extensive bill of rights. Actually, it means that Article I, Section 13 ceases to exist, being subsumed into the Second Amendment.  The destructive force of such a holding on the federal nature of our form of government is not hard to predict.  Allowing removal in this case would have wide-reaching implications for hundreds of other state constitutional provisions that contain similar language, or have been interpreted similarly, to the U.S. Constitution.

Even if there were some — any — reason to grant removal here, to do so would still be inappropriate, because this Court has no authority to grant the relief Plaintiffs seek.  The Supreme Court's *Pennhurst* makes abundantly clear that a federal court cannot order the Governor to conform his actions to state law.  Plaintiffs raised this case in their Motion to Remand, but the Commonwealth failed to address it, apparently conceding this fatal flaw in its argument.

Finally, the Solicitor General's argument in favor of federal plaintiff jurisdiction defies reason — that, because of who Plaintiffs are and what they represent, they should only be

permitted to bring federal causes of action in federal court.  The Commonwealth's actions here are based on a curiously fervent desire to avoid litigating state issues in state court, and are wholly devoid of any colorable legal underpinning.  The Commonwealth has already wasted precious time with its multiple misguided attempts at removal, causing Plaintiffs and others similarly situated quite literally to be denied their day in court on a time-sensitive matter, and permitting irreparable harm to continue unimpeded.  For this, the Court should order the Commonwealth to pay Plaintiffs' fees and costs incurred in having to defend the Commonwealth's baseless removal of this action.

Respectfully submitted,

By: */s/ David G. Browne*
David G. Browne (VSB No. 65306)
Spiro & Browne, PLC
6802 Paragon Place, Suite 410
Richmond, VA  23230
Telephone: 804-573-9220
Email: dbrowne@sblawva.com

William J. Olson (VSB No. 15841)
Robert J. Olson (VSB No. 82488)
Herbert W. Titus (VSB No. 41126)
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA  22180
Telephone: 703-356-5070
114 Creekside Lane
Winchester, VA  22602
Telephone: 540-450-8777
Email: wjo@mindspring.com

Dated: April 16, 2020

*Counsel for Plaintiffs*
LYNCHBURG RANGE & TRAINING, LLC,
VIRGINIA CITIZENS DEFENSE LEAGUE, GUN
OWNERS OF AMERICA, INC., AND
ASSOCIATION OF VIRGINIA GUN RANGES

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of April 2020, a true and accurate copy of the foregoing Plaintiffs' Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Emergency Motion to Remand Case to State Court was filed via the ECF system and served thereby on all parties receiving notice via the ECF system.

_____ */s/ David G. Browne* _____