CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

4/22/2020
JULIA C. DUDLEY, CLERK
BY: s/ CARMEN AMOS
DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| LYNCHBURG RANGE & TRAINING, *et al*., | CASE NO. 6:20-cv-00020 |
| *Plaintiffs*, | |
| v. | **MEMORANDUM OPINION** |
| RALPH NORTHAM, *et al*., | |
| *Defendants*. | JUDGE NORMAN K. MOON |

Before the Court is an "Emergency Motion to Remand Case to State Court" by Plaintiffs Lynchburg Range & Training, LLC, Virginia Citizens Defense League, Gun Owners of America, Inc., and Association of Virginia Gun Ranges. Dkt. 2. The motion is opposed by Defendants, Governor Ralph S. Northam and Virginia State Police Superintendent Garry T. Settle, who assert that removal was proper under 28 U.S.C. § 1441 because this Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1367. Dkt. 13.

This Court has no jurisdiction over this action because it presents quintessential questions of state law traditionally adjudicated by state courts. Virginia businesses and gun rights groups challenge the Virginia Governor's authority to respond to an unprecedented statewide health crisis, arguing that in issuing Virginia Executive Order 53, the Virginia Governor violated their rights recognized by the Virginia Constitution and acted in excess of Virginia state law. Virginia's courts have not yet weighed in on these issues. Under U.S. Supreme Court precedent, federal court jurisdiction should not be found where it would encroach on core state judicial responsibilities, as would be the case here. Independent from this, jurisdiction is improper because none of Plaintiffs' claims necessarily depend on the resolution of some proposition of federal law. Rather, they hang on the scope of two state constitutional rights and a state statute.

For both of these reasons, this Court finds it is without jurisdiction under 28 U.S.C. § 1331 and thereby will remand the case to the state court. As it is without jurisdiction to hear the case, the Court need not address Plaintiffs' arguments that it should abstain under various federal preemption doctrines. The Court also concludes that Plaintiffs are not entitled to attorneys' fees or costs incurred by litigating the removal and remand of this action.

## I.   BACKGROUND

On April 7, 2020, various firearm advocacy groups and a Lynchburg gun range filed suit in the Circuit Court for the City of Lynchburg, seeking to enjoin Virginia Governor Ralph Northam and Virginia State Police Superintendent Gary Settle from enforcing Executive Order 53 ("EO 53"), issued by Governor Northam as part of the Commonwealth's response to the novel coronavirus COVID-19 pandemic. Dkt. 13 at 1; *see Lynchburg Field & Training, et al. v. Ralph Northam, et al.*, No. 6:20-cv-00019. The complaint, accompanied by a motion for a temporary restraining order, sought declaratory and injunctive relief on three grounds: (1) EO 53 is "*ultra vires* and beyond the scope of the Governor's executive authority under the Constitution of Virginia, the Emergency Services and Disaster Law (Va. Code § 44.1-146.13, *et seq*.,) and otherwise"; (2) by ordering the closure of all indoor gun ranges, EO 53 violates the right to bear arms secured by the Second Amendment of the United States Constitution and Article I, § 13 of the Virginia Constitution; (3) EO 53 violates the Virginia Constitution's Anti-Suspension Provision, Art. I, § 7. *Lynchburg Field & Training, et al. v. Ralph Northam, et al.*, No. 6:20-cv-00019 (W.D. Va.) (Defendants' notice of removal).

Defendants removed the case to this Court, asserting federal court jurisdiction pursuant to 28 U.S.C. § 1331 and § 1367, but Plaintiffs voluntarily dismissed the suit shortly after. *Id.* On April 9, 2020, Plaintiffs refiled the action in the Lynchburg Circuit Court. The second complaint

is by and large identical to the first suit; however, Plaintiffs omit from it their plea for relief under the U.S. Constitution, instead relying solely on the Virginia Constitution's right to bear arms under Article I, § 13. Days later, Defendants again removed, Dkt. 1, and Plaintiffs filed the present emergency motion to remand, Dkt. 2. The parties completed an expedited hearing and briefing schedule, and the matter is now ripe for review. Dkt. 5, 9.

## II.   LEGAL STANDARD

Federal district courts possess only the jurisdiction permitted by the U.S. Constitution and authorized by Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Generally, state court defendants may remove a case to federal district court if the state court action could have been originally filed there. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court").

"Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994); Consequently, all doubts about the propriety of removal are resolved in favor of retained state court jurisdiction. *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 181 (4th Cir. 2014); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993). The removing party bears the burden of showing removal was proper. *Md. Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005). Simply put, "[i]f federal jurisdiction is doubtful, a remand is necessary." *Mulcahey*, 29 F.3d at 151; *see* Elizabeth Y. McCuskey, *Clarity and Clarification: Grable Federal Questions in the Eyes of Their Beholders*, 91 Neb. L. Rev. 387, 417 (2012) ("The Fourth Circuit and other circuit courts have cited 'significant federalism concerns' justifying the

strict construction and the presumption against jurisdiction. This presumption further tips the scale toward remand in doubtful and debatable cases.").

### III.   ANALYSIS

"Subject matter jurisdiction defines a court's power to adjudicate cases or controversies— its adjudicatory authority—and without it, a court can only decide that it does not have jurisdiction." *United States v. Wilson*, 699 F.3d 789, 793 (4th Cir. 2012). Defendants assert that this Court possesses subject-matter jurisdiction over this action by virtue of 28 U.S.C. § 1331, which grants federal courts jurisdiction over actions "arising under" federal law. *Burrell v. Bayer Corp.*, 918 F.3d 372, 380 (4th Cir. 2019). Courts evaluate assertions of "arising under" jurisdiction using the "well-pleaded complaint rule," "which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). This means that affirmative defenses, counter arguments, or federal questions that may (or even must) arise later in the case do not count. The rule also "makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." *Caterpillar Inc.*, 482 U.S. at 392. *But see Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987) ("a plaintiff's characterization of a claim as based solely on state law is not dispositive of whether federal question jurisdiction exists").

"[T]he vast majority" of cases arising under federal law "are those in which federal law creates the cause of action." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, an alternative, "slim category" of cases may also be said to arise under federal law even when a plaintiff sues purely under state causes of action, *Gunn v. Minton*, 568 U.S. 251, 258 (2013), but only where "the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Merrell Dow Pharm. Inc.*, 478 U.S. at 808 (quoting *Franchise Tax*

*Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 9 (1983)). This "special and small category" of cases, *Gunn*, 568 U.S. at 258, "captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues," *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005).

Under this branch of "arising under" jurisprudence, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. "Federal jurisdiction will lie only if a case meets all four requirements." *Pressl v. Appalachian Power Co.*, 842 F.3d 299, 303 (4th Cir. 2016). As it is Defendants' burden to establish the propriety of removal, it is likewise Defendants' burden to establish that the four factors outlined in *Gunn* are satisfied. *See Burrell*, 918 F.3d at 381 (finding no jurisdiction because the defendants failed to establish *Gunn*'s third and fourth prongs). Because the Defendants cannot demonstrate that the first or fourth factors of the *Gunn* analysis weigh in favor of finding jurisdiction, the Court need not address whether an issue of federal law is substantial or actually disputed in this case.

**a. Necessarily raised**

Defendants argue that because Article I, § 13 of the Virginia Constitution has been read to be co-extensive with the Second Amendment by the Supreme Court of Virginia, "any conclusion about whether a challenged restriction fails or satisfies Article I, § 13 will necessarily reflect a judgment about whether that same restriction fails or satisfies the Second Amendment." Dkt. 13 at 6.

The Court first notes that this case differs from those that "typically fit" in this subsection of "arising under" jurisdiction: those in which a state statutory cause of action is brought to enforce a duty created by federal law. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 136 S. Ct. 1562, 1570 (2016); *see* John F. Preis, *Jurisdiction and Discretion in Hybrid Law Cases*, 75 U. Cin. L. Rev. 145, 203 (2006) (appendix); *See also Grable*, 545 U.S. at 313 (stating that the Supreme Court had "[shied] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door"). In fact, in their twenty-seven pages of briefing, Defendants fail to cite to a single case in which a federal court found it could assert jurisdiction merely because suit brought under a state-created constitutional or statutory right had a federal analogue, regardless of co-extensivity.

As to the premise of Defendants' argument—that the right to bear arms in the Second Amendment is coterminous with its counterpart in Art. I, § 13—the Supreme Court of Virginia indeed held in 2011 that "the protection of the right to bear arms expressed in Article I, § 13 of the Constitution of Virginia is co-extensive with the rights provided by the Second Amendment of the United States Constitution." *DiGiacinto* v. *Rector & Visitors of George Mason Univ.*, 704 S.E.2d 365, 369 (Va. 2011); *see also Prekker v. Commonwealth*, 782 S.E.2d 604, 605 (Va. App. 2016) (stating that the court's "analysis of appellant's Second Amendment claim applies with equal force to his Article I, § 13 claim"); A.E. Dick Howard, *Commentaries on the Constitution of Virginia* 274 (1974) (writing that the right-to-bear-arms language in Art. I, § 13 is "substantially identical to the rights founded in the Second Amendment"). Indeed, in their complaint and temporary restraining order motion, Plaintiffs cite almost exclusively to federal cases interpreting the Second Amendment in arguing that Defendants violated Article I, § 13. *See* Dkt. 1-1 at 16–21.

6

Defendants argue that based on the Supreme Court of Virginia's determination that Art. I, § 13 is "co-extensive" with the Second Amendment, "resolution of Plaintiffs' right-to-bear arms claim … will *necessarily* entail a determination of whether Executive Order 53 violates the federal constitution." Dkt. 13 at 3. But questions can mirror one another and yet be asked separately. To be sure, at least under the Supreme Court of Virginia's current interpretation, the analysis of the facts in this case presumably would be the same regardless of whether it were brought under the Second Amendment of the federal Constitution or Art. I, § 13 of the Virginia Constitution. But the mere fact that the analysis remains the same between these two different avenues for relief does not mean that the Court would have analyzed a Second Amendment issue or that it would have decided a federal question regardless of the provision invoked. Indeed, the Second Amendment could vanish tomorrow from the U.S. Constitution and Plaintiff's claim would still stand.

Conversely, if Plaintiffs had brought their claim solely under the Second Amendment, this Court could not be said to have necessarily raised an issue arising under the Virginia Constitution or that of any other state whose language mirrors the Second Amendment. *See* Ralph J. Rohner, *The Right to Bear Arms: A Phenomenon of Constitutional History*, 16 Cath. U. L. Rev. 53 (1967) ("the constitutions of thirty-five states guarantee expressly the right to bear arms"). Nor do Plaintiffs' citations to Second Amendment jurisprudence change this, just as a federal plaintiff's reliance on Virginia court decisions in stating a Second Amendment claim mean that they were actually asserting a claim under Art. I, § 13 as well. *Cf. D.C. v. Heller*, 554 U.S. 570, 662 n.29 (2008) (Stevens, J., dissenting) ("The Court stretches to derive additional support from scattered state-court cases primarily concerned with state constitutional provisions. To the extent that those state courts assumed that the Second Amendment was coterminous with their differently worded state constitutional arms provisions, their discussions were of course dicta."). Simply put, while

Art. I, ¶ 13 might currently be closely intertwined with a federal analogue, the ability for plaintiffs to succeed does not depend on the existence (must less the resolution) of any federal law.

Other courts within the Fourth Circuit have rejected similar attempts to remove actions solely alleging state constitutional violations without also pleading under the state provision's federal analogue. In *Common Cause v. Lewis*, for example, a North Carolina district court considered—and rejected—the argument that a claim solely seeking relief under a state constitutional provision necessarily gave rise to a federal question under *Gunn v. Minton* and remanded the state law claim to the state court. *Common Cause v. Lewis*, 358 F. Supp. 3d 505, 509 (E.D.N.C. 2019), *aff'd on other grounds*, No. 19-1091, 2020 WL 1879579 (4th Cir. Apr. 16, 2020). Indeed, as here, one of the North Carolina constitutional provisions (its equal protection clause) had been interpreted by North Carolina's highest court to be synonymous with the federal equal protection analogue. *See Frye v. Brunswick Cty. Bd. of Educ.*, 612 F. Supp. 2d 694, 706 (E.D.N.C. 2009) ("Like substantive due process, the North Carolina Supreme Court interprets the state and federal equal protection clauses synonymously."); *White v. Pitt Cty. Sch.*, No. 4:17-cv-00075-BR, 2018 WL 1020123, at *5 (E.D.N.C. Feb. 22, 2018). Other federal courts have remanded state constitutional claims to state courts in similar circumstances. *See, e.g.*, *Farmer v. Chattanooga-Hamilton Cty. Hosp. Auth.*, No. 1:02-cv-086, 2002 WL 32058962, at *2 (E.D. Tenn. July 9, 2002) (rejecting defendants' contention that federal "arising under" jurisdiction existed over plaintiff's claim alleging a violation of a state constitutional provision, even though it was coterminous with the First Amendment).

Defendants' analogy to the Supreme Court's jurisprudence regarding its ability to review state-court judgments helps to illuminate the case against it. Dkt. 13 at 7. The U.S. Supreme Court lacks appellate review over cases decided by a state's highest court when an adequate and

independent ground for that decision rests on state law. *Fitzgerald v. Racing Ass'n of Central Iowa*, 539 U.S. 103, 106 (2003). To this end, the Supreme Court has held that where a state's highest court rests its decision on coterminous state and federal constitutional provisions, the Supreme Court may review the singular issue without the state constitutional question providing an independent and adequate ground for the decision. *Pennsylvania v. Muniz*, 496 U.S. 582, 588 n.4 (1990). Defendants take from this the proposition that "it is impossible to separate Plaintiffs' state constitutional claim from the federal claim they have purported to abandon." Dkt. 13 at 7. But in both cases cited by Defendants, the Supreme Court cases addressed only lower court decisions decided on *both* state and federal constitutional provisions. *See Pennsylvania v. Muniz*, 496 U.S. 582, 588 n.4 (1990); *Fitzgerald v. Racing Ass'n of Central Ia.*, 539 U.S. 103, 106 (2003). Defendants' argument would have been more persuasive had they cited Supreme Court decisions asserting jurisdiction over a state supreme court decision solely interpreting a state constitutional provision with a coterminous counterpart in the U.S. Constitution, but they have not cited any such cases, and the Court has not identified any.

This distinction is further clarified by Defendants' attempt to analogize the present case to *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning,* 136 S.Ct. 1562 (2016), and *Bracey v. Board of Education of City of Bridgeport*, 368 F.3d 108 (2d Cir. 2004). Defendants invoke the *Merrill Lynch* Court's discussion of a hypothetical state law "mak[ing] illegal 'any violation of [federal securities laws].'" Dkt. 13 at 8 (citing *Merrill Lynch*, 136 S.Ct. at 1569). Defendants state that this hypothetical is directly applicable to the present case: "just as with the hypothetical posited in *Merrill Lynch*—Plaintiffs' 'very success' on their right-to-bear arms claim 'depends on giving effect to a federal [right].'" *Id.* (citing *Merrill Lynch*, 136 S.Ct. at 1570). But this overextends the Supreme Court's hypothetical into entirely new territory. When the Supreme Court in *Merrill*

*Lynch* discussed cases in which a plaintiff "must undertake to prove, as the cornerstone of his suit, that the defendant infringed a requirement of" federal law, *Merrill Lynch*, 136 S.Ct. at 1569–70, it went no further than the typical case fitting within this species of "arising under" cases: those in which federal law supplies some discrete element in a state cause of action, such as a defendant's duty in a state negligence action. As *Merrill Lynch* stated shortly after posing this "hypothetical":

> As this Court has explained, a federal court has jurisdiction of a state-law claim if it "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance" of federal and state power. *Grable,* 545 U.S., at 314, 125 S.Ct. 2363; see *Gunn,* 568 U.S., at ——, 133 S.Ct., at 1064–1065 (framing the same standard as a four-part test). That description typically fits cases, like those described just above, in which a state-law cause of action is "brought to enforce" a duty created by the Exchange Act because the claim's very success depends on giving effect to a federal requirement.

*Id.* at 1570.

Ironically, Defendants' next citation, to *Bracey v. Board of Education of City of Bridgeport*, demonstrates exactly this sort of case: those in which federal jurisdiction exists because federal law provides a discrete and necessary element of the plaintiff's complaint. 368 F.3d at 108. The cause of action analyzed in *Bracey*, Conn. Gen.Stat. § 31–51q, makes liable employers who violate rights of employees secured by federal or Connecticut constitutional law, similar to the structure of 42 U.S.C. § 1983. The plaintiff alleged that defendants were liable because they had violated his free speech rights guaranteed by both the United States and Connecticut Constitutions. *Id.* at 115. In that case, a violation of the U.S. Constitution was made an explicit element of the plaintiff's claim under § 31–51q. Thus, like the hypothetical in *Merrill Lynch*—and unlike the present case— Bracey's claim for relief explicitly incorporated federal law as a necessary element to be proven in Plaintiff's case in chief. *Id.*

In sum, Plaintiffs' claim does not depend on the Second Amendment having been violated, because the Second Amendment does not form a necessary aspect of Plaintiff's claim that he must raise in order to prevail. Especially in light of the Supreme Court's words of warning to courts when "exploring the outer reaches of § 1331," *Merrell Dow*, 478 U.S. at 810; *Grable*, 545 U.S. at 317, and given the strict construction courts must afford to section 1441, *Mulcahey*, 29 F.3d at 151, the Court cannot accept Defendants' novel—and ultimately unavailing—theory as to why Plaintiffs' case necessarily raises an issue of federal law. Defendants have failed to show that the first prong in *Gunn* has been satisfied, and thus the Court cannot assert subject-matter jurisdiction over the action.

### b.  Balance of state and federal judicial responsibilities

The fourth factor outlined in *Gunn* and *Grable*—whether federal jurisdiction may be asserted without upsetting "any congressionally approved balance of federal and state judicial responsibilities"—also counsels against a finding of federal jurisdiction over this action. *Gunn*, 568 U.S. at 258. The Fourth Circuit in applying this prong has considered whether the action's legal issues present "quintessential question[s] of state … law," *Pressl*, 842 F.3d at 305, and whether exercising federal jurisdiction over this category of case "would risk enormous disruption to the division of judicial labor," *Burrell*, 918 F.3d at 387. The Supreme Court similarly has focused on the importance of the legal issues to the state judiciary. *See Gunn*, 568 U.S. at 264 (considering under *Gunn*'s fourth prong that Texas courts had a "special responsibility" and "interest" in the conduct underlying the state cause of action); *see also Grable*, 545 U.S. at 314 ("there must always be an assessment of any disruptive portent in exercising federal jurisdiction").

First, both parties recognize the paramount importance of state judiciaries in interpreting their respective constitutions. Dkt. 18 at 10; Hr'g Tr. (Apr. 13, 2020), Mot. to Remand 15:23

(describing the Supreme Court of Virginia as the "ultimate expositor of state law"). So too has the U.S. Supreme Court recognized that "[i]t is fundamental that state courts be left free and unfettered by us in interpreting their state constitutions." *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940); *see also Michigan v. Long*, 463 U.S. 1032, 1041 (1983) (citing *Minnesota v. Nat'l Tea Co.*). Were the Court to allow jurisdiction in this case, it would allow for the complete circumvention of a state's highest court in cases concerned solely with the reach of a state constitutional provision. *See Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2188 (2019) (Kagan, J., dissenting) ("federal courts should refrain whenever possible from deciding novel or difficult state-law questions"). Again, the Supreme Court has "consistently emphasized that, in exploring the outer reaches of § 1331, determinations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharm. Inc.*, 478 U.S. at 810. That caution seems particularly salient here. Although Virginia's right to bear arms is presently read as co-extensive with the Second Amendment, this was decided as a matter of first impression less than ten years ago, *DiGiacinto*, 704 S.E.2d at 369, and Virginia courts have had few opportunities to address the question since. *E.g.*, *Prekker*, 782 S.E.2d at 605.

Two federal courts have given great weight to such concerns in similar cases. In *Carpenter v. Wichita Falls Independent School District*, a school administrator brought claims in state court under the Texas Constitution's First Amendment against a Texas school district, which removed the case to federal court. 44 F.3d 362 (5th Cir. 1995). The Fifth Circuit reversed the district court's decision to deny the plaintiff's motion to remand. While the decision predated the Supreme Court's clarification of the branch of "arising under" jurisdiction applicable here, *see Gunn* and *Grable*, the Fifth Circuit held that the mere presence of federal overlap with the Texas constitutional

provision was insufficient to imbue the action with the "federal character" necessary to find federal jurisdiction. *Id.* at 372.

A Mississippi district court remanded a similar case in *Beavers v. City of Jackson*, 3:19-cv-735, 2020 WL 1182298 (S.D. Miss. Feb. 12, 2020), in which pro-life protestors challenged an ordinance restricting how closely they could protest to Mississippi abortion clinics as violative of Mississippi's free speech, peaceable assembly, due process, and equal protection clauses. They brought no claim under the U.S. Constitution, yet defendants removed the action to federal court, asserting federal jurisdiction proper under section 1331. Defendants argued that "Plaintiffs' free-speech claim raises a substantial federal issue under the First Amendment," because the right as it appears in the Mississippi Constitution is "inextricably entwined with rights created by the United States Constitution" and "at the center of controversial and evolving federal jurisprudence[.]"[1] The Mississippi federal court disagreed, citing the fact that Mississippi's free speech clause was not, in all instances, coterminous with the federal free speech clause, but also emphasizing the fundamental tenet of federalism that "state courts be left free and unfettered in interpreting their state constitutions." *Beavers*, 2020 WL 1182298 at *3 (citing *Florida v. Powell*, 559 U.S. 50, 56, (2010); *Minnesota v. Nat'l Tea Co.*, 309 U.S. 551, 557 (1940)).

To be sure, there is some daylight between those two cases and the matter before the Court. Both the Fifth Circuit and the Mississippi district court found evidence that the state constitutional provision at issue was not necessarily coterminous with the related federal provision. *Carpenter*, 44 F.3d at 368; *Beavers*, 2020 WL 1182298 at *3. However, both cases nevertheless emphasized the fundamental importance of the state judiciary's role in interpreting that state's constitution as

---

[1] Defendants argued that the plaintiffs' complaint also necessarily raised Establishment Clause and Supremacy Clause issued. *Beavers*, 2020 WL 1182298 at *2.

pertinent to their decision. *Carpenter*, 44 F.3d at 367 ("[Defendant's] argument, standing alone, disregards principles of federalism; it ignores the superiority of state-court forums for state-law claims and denigrates the state's authority to fashion independent constitutional law." *Beavers*, 2020 WL 1182298 at *3. ("It is up to Mississippi's courts to interpret the state's constitution and develop the state's constitutional law.").

Similar to *Beavers* and *Carpenter*, such a federal incursion into state constitutional and statutory interpretation would be particularly felt in the present case, where the interest of having Virginia courts decide issues of Virginia law is readily apparent from the face of the complaint. *See Gunn*, 568 U.S. at 264. This case involves Virginia plaintiffs challenging the actions of Virginia officials as both unauthorized by and violative of Virginia statutory and constitutional law. What's more, as the COVID-19 pandemic continues to wreak havoc in the state, the degree to which Governor Northam's emergency powers may be curtailed not just in relation to Art. I, § 19 but by its Anti-Suspension Provision, Art. I, § 7, present matters of profound gravity to a Virginia forum. They are "quintessential" questions of Virginia constitutional authority and should thus be litigated in Virginia courts. *Pressl*, 842 F.3d at 305.

For these reasons, the Court finds that it could not assert jurisdiction over the present action without posing a serious risk of upsetting "any congressionally approved balance of federal and state judicial responsibilities." *Gunn*, 568 U.S. at 258. Federal jurisdiction is absent because Plaintiffs' claims do not necessarily raise an issue of federal law, *id.*, and these federalism concerns provide an additional, independent basis for the Court's conclusion that it is without jurisdiction here. *Gunn*, 568 U.S. at 258; *Pressl*, 842 F.3d at 303 ("Federal jurisdiction will lie only if a case meets all four requirements [under *Gunn*].").

## IV.   ATTORNEY'S FEES

Within their motion to remand, Plaintiffs also assert that 28 U.S.C. § 1447(c) entitles them to recover the costs, expenses and attorneys' fees incurred in litigating the removal and remand of their case before this Court. Dkt. 2 at 15. According to Plaintiffs, "Defendant's [sic] parlor tricks border on sanctionable conduct," and "[t]he Commonwealth's rationale for removal is baseless and demonstrates bad faith, and thus are [sic] subject to payment of Plaintiffs' attorneys' fees, expenses, and costs." *Id.*

"An order remanding the case *may* require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) (emphasis added). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005). The Fourth Circuit has found bad faith to be a major factor in determining whether granting attorney's fees is appropriate. *In re Lowe*, 102 F.3d 731, 733 n.2 (4th Cir. 1996) ("Even if § 1447(c) empowered us to require the district court [in this case] to award fees at this juncture, we would decline to do so. There is no evidence of bad faith by either party.").

Plaintiffs' motion falls far short of this standard. Not only have Defendants presented several substantial (though ultimately unsuccessful) arguments in favor of removal, counsel for Defendants removed the case the immediate business day after it was filed and then complied with the Court's highly expedited hearing and briefing schedule. Defendants had a reasonable basis for removing the case to this Court, and nothing in their conduct before this Court evinces bad faith. Plaintiffs' request for fees and costs under section 1447 will be denied.

15

### Conclusion

This action presents legal issues fundamental to the provenance of Virginia courts, including important questions about the scope of the Virginia Constitution. This Court cannot assert jurisdiction here without a risk of upsetting the divide between state and federal jurisdictional duties. Moreover, the fact that none of Plaintiffs' claims necessarily turn on a proposition of federal law independently renders this Court unable to assert jurisdiction. For these reasons, this Court lacks jurisdiction over the action, which in turn must be remanded to state court. An appropriate order will issue.

Entered this 22nd day of April, 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE